**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**DENNIS G. RICHARD,**

    **Plaintiff,**

  v.

**CALIBER HOME LOANS, INC.,** *et al.***,**

    **Defendants.**

**Case No. 2:15-cv-2647
Judge George C. Smith
Magistrate Judge Elizabeth P. Deavers**

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants' Motion to Compel (ECF No. 25), Defendants' Memorandum in Support (ECF No. 26), Plaintiff's Response in Opposition (ECF No. 27), and Defendants' Reply (ECF No. 28.). For the reasons explained below, Defendants' Motion to Compel is **GRANTED IN PART** and **DENIED IN PART**. (ECF No. 25.)

### I. BACKGROUND

In the instant case, Plaintiff asserts, for the third time, claims against Defendants or Defendants' predecessors in interest concerning his mortgage loan. Plaintiff has entered into two settlement agreements regarding his mortgage and, in this matter, disputes the effect of the December 17, 2014 Joint Settlement, Release and Confidentiality Agreement (the "Second Settlement Agreement) on his mortgage balance. (ECF No. 26-4 at 46-48.)

The Second Settlement Agreement provides, *inter alia*, that Defendants "shall waive the present deferred interest balance of $28,893.15 and deferred fees balance of $10.74 owed on account of the Note." (*Id*. at 46.) The Second Settlement Agreement also provides that "Caliber will also spread the repayment of current escrow deficiency shortage over a period of sixty (60) months. Notwithstanding the foregoing, [Plaintiff] agrees and understand that the determination

of his monthly escrow payment is determined by the Note, Mortgage and other documents and is subject to future change in accordance with the same at any time." (*Id*.)  The Second Settlement Agreement contains no other provisions addressing amounts due or payable under the mortgage agreement.

At the time the parties entered into the Second Settlement Agreement, Plaintiff had fallen approximately one month behind on his payments.  Defendants informed Plaintiff's counsel of this shortfall before executing the Second Settlement Agreement.  (ECF Nos. 26 at 6 & 26-4 at 20.)  In his Complaint, however, Plaintiff states that he believed "he was once again current on his mortgage loan."  (ECF No. 1 at 8.)  Upon receiving his mortgage statement showing an arrearage, Plaintiff sent Defendant Caliber a Qualified Written Request ("QWR") seeking explanation of his default, which is the basis of the underlying dispute in this case.  (*Id*. at 8-9)

In the course of conducting discovery in this matter, Defendants propounded certain requests regarding Plaintiff's knowledge and beliefs about his mortgage balance and the effect of entering into the Second Settlement Agreement.  Plaintiff, in turn, objected, asserting the attorney-client privilege, and provided Defendants with a privilege log.  (ECF No. 26-7.)  Defendants now move the Court to compel Plaintiff to produce the subject communications or, in the alternative, to review the communications *in camera* in order to determine whether the crime-fraud exception to the attorney-client privilege applies.  (ECF No. 25.)

The discovery requests before the Court are Defendants' Interrogatory Nos. 3, 4, 5, and 6.  Defendants' Interrogatory No. 3 asks Plaintiff to "[i]dentify each and every correspondence, communication or document of which Dennis G. Richard was aware regarding the negotiation of the terms of the Second Settlement Agreement before executing the Second Settlement Agreement."  (ECF No. 26-5 at 5.)  Plaintiff Objects that "[t]his request seeks confidential

information protected by the attorney-client privilege." (*Id.*) Defendants' Interrogatory No. 4 asks Plaintiff to "[s]tate with specificity [Plaintiff's] understanding of whether or not his Mortgage account was current as of January 6, 2015, and state the complete basis for this belief, with reference to documents where appropriate." (*Id.*) Plaintiff responds that he does not possess any responsive documents other than those provided with his responses to Defendants' interrogatories. (*Id.*) Defendants' Interrogatory No. 5 asks Plaintiff to "[i]dentify any document, correspondence and/or communication . . . which You contend memorialized the Second Settlement Agreement. (*Id.* at 5-6.) Plaintiff objects that "[t]his request is not relevant to any party's claim or defense. Defendants' Interrogatory No. 6 asks Plaintiff to "identify every [non-privileged] document with which [Plaintiff] was familiar regarding the status of his Mortgage account as of January 6, 2015." (*Id.* at 6.) Plaintiff objects that "[t]his request seeks confidential information protected by the attorney-client privilege." (*Id.*)

Defendants assert that Plaintiff used the subject communications with counsel "to aid a fraudulent scheme to challenge amounts which he knew that he owed." (ECF No. 26 at 7.) Defendants believe "[t]hose questions can only be answered by looking at the communications between Plaintiff and Plaintiff's counsel regarding what effect the Second Settlement Agreement would have on Plaintiff's mortgage loan." (*Id.*) According to Defendants, any privilege asserted by Plaintiff fails because the subject communications fall under the crime-fraud exception to the attorney-client privilege. (*Id.*)

Plaintiff counters that he could not have known the state of his mortgage balance until after signing the Second Settlement Agreement. (ECF No. 27 at 4.) According to Plaintiff, because he did not know his then-current balance, he could not have used counsel's communications to further a fraudulent scheme to induce Defendants to enter into the Second

3

Settlement Agreement.  (*Id*.)  Plaintiff asserts that he, therefore, entered into the Second Settlement agreement, and filed both his QWR and his suit in this Court, in good faith.  (*Id*. at 3.)

## II. STANDARD OF REVIEW

"Before the movant is entitled to an in camera inspection of documents, he must show a reasonable probability that they contain relevant evidence."  *Ridenour v. Collins*, 692 F. Supp. 2d 827, 831 (S.D. Ohio 2010).  In addition, Defendants, as movants, "must make a factual showing adequate to support a good faith belief that the review will uncover unprivileged documents."  *Konica Minolta Bus. Solutions, USA, Inc. v. Allied Office Prods., Inc.*, No. 2:06–cv–71, 2010 WL 1741336 at *2 (S.D. Ohio Apr. 29, 2010) (citing *United States v. Zolin*, 491 U.S. 554, 572 (1989)).  "Groundless fishing expeditions should not be permitted."  *Williams v. Duke Energy Corp.*, No. 1:08–cv–00046, 2014 WL 3895227 at *6 (S.D. Ohio Aug. 8, 2014) (citing *Zolin*, 491 U.S. at 571).

As the Supreme Court has observed, "*in camera* inspection . . . is a smaller intrusion upon the confidentiality of the attorney-client relationship than is public disclosure."  *Zolin*, 491 U.S. at 572 (internal quotes and citations omitted).  The evidentiary showing necessary to support *in camera* review is, therefore, less than that necessary to overcome the privilege and "need not be a stringent one." (*Id*.)

> Once that showing is made, the decision whether to engage in *in camera* review rests in the sound discretion of the district court. The court should make that decision in light of the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through *in camera* review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply.

*Id*.; *Automated Sols. Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 517 (6th Cir. 2014).

4

In Ohio, an attorney shall not disclose matters "concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client."[1] Ohio Rev. Code § 2317.02(A) (1). Because it reduces the amount of discoverable information available to the parties in a lawsuit, the privilege must be narrowly construed. *In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996). "The burden of establishing the existence of the privilege rests with the person asserting it." *In re Grand Jury Investigation No. 83–2–35*, 723 F.2d 447, 450 (6th Cir. 1983). As the Supreme Court recognized decades ago:

> Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves the public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client. Communications between in-house counsel and an employee come within the purview of the attorney-client privilege.

*Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him [or her] to give sound and informed advice." *Id*. at 390.

The Court of Appeals for the Sixth Circuit has held that the following criteria must be satisfied for a communication to be protected from disclosure by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) unless the protection is waived.

*Reed v. Baxter*, 134 F.3d 351, 355–56 (6th Cir. 1998) (citing *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992)).

---

[1] The law in Ohio regarding attorney-client privilege does not materially differ from federal common law. *Guy v. United Healthcare Corp.*, 154 F.R.D. 172, 173 n.3 (S.D. Ohio 1993).

Ohio recognizes the crime-fraud exception to the attorney-client privilege.[2] The crime-fraud exception applies to communications between an attorney and client which are "intended in some way to facilitate or to actively conceal a crime or fraud." *Sutton v. Stevens Painton Corp.*, 193 Ohio App.3d 68, 96, 951 N.E.2d 91 (Ohio Ct. App. 2011). "A party invoking the crime-fraud exception must demonstrate that there is a factual basis for a showing of probable cause to believe that a crime or fraud has been committed and that the communications were in furtherance of the crime or fraud." *State ex rel. Nix v. Cleveland*, 83 Ohio St.3d 379, 384, 700 N.E.2d 12 (Ohio 1998). Communications which are intended to conceal, in an active way, a crime or fraud further the wrongful conduct, as do communications which facilitate a fraud, but communications defending against past conduct do not fall within the exception. *Id.*; Sutton, 193 Ohio App.3d at 75, 951 N.E.2d 91. "The attorney-client privilege may not be asserted to conceal the attorney's cooperation with the client's wrongdoing." *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 2010-Ohio-4469, ¶ 25, 127 Ohio St. 3d 161, 166, 937 N.E.2d 533, 538 (Ohio 2010).

### III. ANALYSIS

In considering the *Zolin* factors, the Court first notes that the materials that Defendants ask the Court to review are minimal and consist entirely of email communications. (ECF No. 26-7 at 2-7.) Second, the question of whether Plaintiff filed his QWR and his subsequent action in this Court in good faith goes directly to the heart of the Second Settlement Agreement's effect,

---

[2] The Court construes the crux of Defendants' theory to be that Plaintiff entered into the Second Settlement Agreement in bad faith, with no intention of ever carrying out his obligations, and, thereby, fraudulently induced Defendants to enter into the contract. Because this is an issue governed by the Ohio common law of contracts, Ohio law also governs the issue of whether the crime-fraud exception applies. Fed. R. Evid. 501.

which Plaintiff asks the Court to construe in resolving his claims.[3] (ECF No. 1 at 16-18.) Last, Defendants have provided sufficient evidence "to support a good faith belief that the review will uncover unprivileged documents." *Zolin*, 491 U.S. at 572. Defendants' December 17, 2014 email to Plaintiff's counsel indicates that the parties had "previously discussed" Plaintiff's then-current delinquency. (ECF No. 26-4.) Furthermore, Plaintiff's privilege log indicates communications regarding "monthly payment to Caliber" and "Caliber monthly statement" in June 2014, July 2014, December 2014 and January 2015. (ECF No. 26-7 at 4-6.) Plaintiff subsequently mailed his QWR to Defendant Caliber on April 15, 2015. (ECF No. 1 at 9.) Defendants surmise that Plaintiff used these communications to further a scheme in which he entered into the Second Settlement Agreement in bad faith, intending all along to avoid making due payments by the current action against Defendants. (ECF No. 26 at 2.)

Defendants present a plausible interpretation of Plaintiff's actions in challenging his mortgage balance under the Second Settlement Agreement. Defendants' plausible interpretation is "adequate to support a good faith belief that the review will uncover unprivileged documents."[4] *Konica Minolta Bus. Solutions, USA, Inc.*, 2010 WL 1741336 at *2. Although Plaintiff also presents a plausible, but innocent, interpretation, for purposes of determining

---

[3] Plaintiff seeks a declaration of "who is the person entitled to enforce the note; . . . the amount due under the note and mortgage; . . . [and] that Plaintiff is not in default under the terms of the note and mortgage." (ECF No. 1 at 18.) In order to decide whether to grant Plaintiff this declaratory relief, the Court must interpret the effect of the Second Settlement Agreement on any payments Plaintiff might have owed under the terms of the mortgage agreement.

[4] The Court notes that its finding merely indicates a fair probability exists that an *in camera* inspection will identify at least one non-privileged document. *See In re Grand Jury Subpoenas 04–124–03 and 04–124–05s*, 454 F.3d 511, 520 (6th Cir. 2006) (setting forth probable cause as "weakly analogous" to the *Zolin* standard). Nothing in this Opinion and Order should be construed as any kind of determination that the crime-fraud exception applies in this case to pierce the attorney-client privilege. The Court merely finds that Defendants have adduced sufficient evidence to warrant an *in camera* review.

whether an *in camera* review is appropriate, "[t]he Court need not choose between these competing storylines; it is enough that someone could reasonably buy into [Defendants'] version." *DRFP, LLC v. Republica Bolivariana de Venezuela*, No. 2:04-CV-793, 2015 WL 2452970 at *4 (S.D. Ohio May 22, 2015).

The Court notes that Defendants' appeal to the crime-fraud exception is directed only at those communications that Plaintiff might have used to further a scheme to challenge the Second Settlement Agreement in bad faith. The Court finds it appropriate, therefore, to require Plaintiff to turn over for *in camera* review only those communications that reasonably could be expected to further such a scheme. Accordingly, the Court finds that only those communications from June 25, 2014 through January 16, 2015 concerning settlement negotiations, Plaintiff's monthly payments, Plaintiff's monthly statements, discovery, and case strategy are appropriate for *in camera* review at this time. The Court, however, may order Plaintiff to turn over additional communications following the Court's initial inspection.

## IV. CONCLUSION

For the reasons explained above, Defendants' Motion to Compel is **GRANTED IN PART** and **DENIED IN PART**. (ECF No. 25.) Plaintiff is **DIRECTED** to submit the subject communications to the Magistrate Judge for *in camera* review no later than **FOURTEEN (14) DAYS** from the date of this Order.

**IT IS SO ORDERED.**

Date: June 29, 2016         /s/ *Elizabeth A. Preston Deavers*
                            ELIZABETH A. PRESTON DEAVERS
                            UNITED STATES MAGISTRATE JUDGE