**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Dennis G. Richard | ) | Case No. 2:15-cv-2647 |
| | ) | |
| Plaintiff, | ) | District Judge George C. Smith |
| | ) | |
| v. | ) | Magistrate Judge Elizabeth Preston Deavers |
| | ) | |
| Caliber Home Loans, Inc., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND TO ENFORCE SETTLEMENT AGREEMENT

Now come Defendants, through the undersigned, to respectfully move this Court to grant Defendants summary judgment on Plaintiff's claims and on Defendants' remaining counterclaims.[1] There are no genuine disputes of any material facts. Plaintiff's account is delinquent and Plaintiff refuses to pay. Instead, Plaintiff has the audacity to ask this Court to declare that he is not delinquent. Plaintiff's continued attempts to undo the terms of a settlement agreement he signed are a breach of that settlement agreement. Plaintiff's statutory claims against Defendants all stem from Plaintiff's attempts to challenge the amount of his delinquency, in contravention of the settlement agreement. For these reasons, fully articulated in the attached Memorandum in Support and incorporated herein, the Court should grant Defendants' Motion for Summary Judgment and to Enforce Settlement Agreement.

---

[1] Defendants filed a Motion for Leave to Amend Answer and Counterclaims (the "Motion for Leave"), seeking to withdraw Defendants' counterclaims for Fraud, Breach of Contract for the First Settlement Agreement and Rescission of the Second Settlement Agreement. *See* ECF No. 79. Whether or not the Motion for Leave is granted, Defendants do not seek summary judgment on these claims.

Respectfully Submitted,
*/s/ Robert C. Folland*
Robert C. Folland (0065728)
David J. Dirisamer (0092125)
BARNES & THORNBURG LLP
41 South High Street, Suite 3300
Columbus, OH  43215
614-628-1429 (Office)
614-628-1433 (Facsimile)
Rob.Folland@btlaw.com
David.Dirisamer@btlaw.com
*Attorneys for Defendants*

## MEMORANDUM IN SUPPORT

I.      Background

The Sixth Circuit has noted the "proliferation of litigation" under the FDCPA creating "a

class of professional plaintiffs…" *Federal Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504,

513-14 (6th Cir. 2007) (internal citation omitted).  Similarly, courts warn of borrowers who

refuse to pay amounts owed and bring statutory actions for "a debt collection letter that contains

some minute variation from the statute's requirements." *Id.* at 514 (internal citation omitted).

Plaintiff's account is delinquent and Defendants have not committed any statutory violations.

Rather than simply paying the amount due, Plaintiff asks this Court to declare that he is not

delinquent in contravention of a settlement agreement. Though Plaintiff's focus all along has

been on contesting his delinquency, Plaintiff also seeks to improperly impose statutory liability

for Defendant's responses to Plaintiff's wrongful assertions concerning his delinquency. The

Court should not countenance such efforts.

This is the third case in which Plaintiff asserts claims concerning his mortgage loan. In

each, Plaintiff has been represented by the same law firm. Plaintiff has sent three purported

Qualified Written Requests ("QWRs"), and has, no matter what the response, always claimed the

response as deficient. ECF No. 74-1, Exhibits 11 and 12; ECF No. 1, ¶¶ 74-82.

The first lawsuit between the parties was a foreclosure case in which Plaintiff asserted

counterclaims. That case ended in a modification agreement and a settlement agreement (the

"First Settlement Agreement"). ECF No. 74-1, Exhibits 5 and 6. The modification included a

provision deferring certain amounts to the end of the loan. ECF No. 74-1, Exhibit 6. Plaintiff

contested these amounts through a second lawsuit, filed in this Court in April 2014. ECF No. 74-

1, Exhibit 11. During that second lawsuit, Plaintiff never challenged the amount of his then-

current monthly payment nor contested the application of payments. ECF No. 74-1, Exhibits 11

and 12. The second lawsuit ended in a settlement agreement executed by Plaintiff on December 17, 2014 (the "Second Settlement Agreement"). Alexis Affidavit, Exhibit 7. Caliber agreed to waive the amounts Plaintiff disputed in the second lawsuit. *Id.*

Plaintiff's counsel was told, before the Second Settlement Agreement, that Plaintiff's account was delinquent, as the Court recognized. Alexis Affidavit, Exhibit 8 ("…your client did not and has not made the correct full payment for some time. Partial payments are not applied until sufficient funds are received, as such, when your client pays the remaining amount of his Novembe [sic] payment, it will be credited to the account."); ECF No. 33, at 2. The delinquency stemmed from Plaintiff's 2014 payments. Plaintiff paid $1,255.71 per month beginning May 27, 2014. Richard Deposition, 119:1-12. At that time, and until November 1, 2016, Plaintiff owed $1,470.12 per month. Alexis Affidavit, ¶ 21. The Second Settlement Agreement did not waive the then-existing deficiency, which the Court recognized. Alexis Affidavit, Exhibit 7; ECF No. 33, at 2. Through the Second Settlement Agreement, Plaintiff broadly released any claim that his account was not delinquent at that time. Alexis Affidavit, Exhibit 7. After executing the Second Settlement Agreement, but before cashing the settlement check, Plaintiff was again informed of the delinquency. Alexis Affidavit, ¶¶ 48-51; ECF No. 74-1, Exhibit 16, at 170 ("He is due for his Nov & Dec payments…"). Nevertheless, Plaintiff asserted his account was not delinquent as of the Second Settlement Agreement through an April 15, 2015 purported QWR. Alexis Affidavit, Exhibit 9. Plaintiff even asks the Court to declare his account not delinquent. ECF No. 1, ¶ 137. Plaintiff released this claim, and by pursing it breached the Second Settlement Agreement.

The genesis of this dispute is Plaintiff's belief that the Second Settlement made his account current. Richard Deposition, 154:13-17. However, Plaintiff cannot identify any such language in the Second Settlement Agreement. Richard Deposition, 108:25-109:18. Furthermore,

Plaintiff does not know whether his account was delinquent when he executed the Second Settlement Agreement. Richard Deposition, 110:25-111:4. Of course, Plaintiff was repeatedly informed that his account was delinquent, based on his 2014 payments. Alexis Affidavit, Exhibit 8 ("… has not made the correct full payment for some time."); Richard Deposition, 148:3-151:15 (March 31, 2015 email). Despite this, Plaintiff's purported QWR explicitly states that Plaintiff made all payments during the 2014 litigation and that his account is current. Alexis Affidavit, Exhibit 9. Neither claim is true. Worse yet, both claims were demonstrably false at that time. Nevertheless, it is this purported QWR, premised on false statements, through which Plaintiff seeks to impose liability.

## II.      Summary Judgment Standard

Summary judgment is appropriate if there are no genuine issues of material fact. FRCP 56(C). The moving party must identify deficiencies in the other party's case showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). No genuine issue of material fact exists when a party "fails to make a showing sufficient to establish the existence of an element to that party's case, and on which that party will bear the burden of proof at trial." *Id* at 322. Summary judgment is inappropriate when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Once this burden is met, the non-moving party must point to specific facts showing there are genuine issues of material fact. *Id.* at 250.

## III.      Law and Argument

## A.  Plaintiff Breached the Second Settlement Agreement

Breach of contract claims have four elements: "1) the existence of a binding contract; 2) the non-breaching party performed its contractual obligations; 3) a breach in contractual

obligations by the other party; and 4) the non-breaching party suffered damages as a result of the breach." *Holmes v. Wilson*, 2009 WL 3673015, at *2 (S.D. Ohio Oct. 30, 2009) (internal quotation marks omitted). In this case, there is no dispute on the first two points. At issue is whether Plaintiff breached his obligations by continuing to assert that his account was not delinquent as of the date of the Second Settlement Agreement when the undisputed evidence is that his account was delinquent. Plaintiff released any such claim through the Second Settlement Agreement and pursuing such a claim is a breach of the Second Settlement Agreement. Therefore, Plaintiff has breached the Second Settlement Agreement in bringing this case, and Defendants are entitled to their attorney fees in defending this case as a result.

A settlement agreement is a contract. *Tocci v. Antioch University*, 967 F.Supp.2d 1176, 1191 (S.D. Ohio 2013). Federal courts can compel enforcement of the terms of a settlement agreement. *Bowater North American Corp. v. Murray Machinery, Inc.*, 773 F.2d 71, 76-77 (6th Cir. 1985). Questions of contract interpretation "are generally considered questions of law…" *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996). In interpreting contracts, Ohio courts "give effect to the intent of the parties." *Sunoco, Inc. (R& M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 953 N.E.2d 285, 2011 Ohio 2720, ¶37. Courts apply the plain meaning "unless another meaning is clearly apparent from the contents of the agreement." *Id.* When the language is unambiguous, with a definite legal meaning, courts look only to the written terms. *Id.* A release within an agreement "is ordinarily an absolute bar to a later action on any claim encompassed within the release." *Haller v. Borror Corp.*, 50 Ohio St.3d 10, 13 (1990).

Damages for the breach of a settlement agreement can include attorney fees. Under Ohio law, "[w]hen a party breaches a settlement agreement to end litigation and the breach causes a party to incur attorney fees in continuing litigation, those fees are recoverable as compensatory

4

damages…" *Tejada-Hercules v. State Auto Ins. Co.*, No. 08AP-150, 2008 Ohio 5066 (Ohio Ct. App. Sept. 30, 2008). This principle applies regardless of who filed the action. *Id.* at ¶ 10. As the Court noted, "the only pertinent issue to address was what damages were directly caused by breach of the settlement agreement." *Id.* Any such damages are compensatory damages. The Sixth Circuit has recognized this principle in applying Ohio law. *See Rohrer Corp. v. Dane Elec. Corp. USA*, 482 Fed.Appx. 113, at *3 (6th Cir. 2012) ("Ohio law allows a court to award attorney's fees as compensatory damages when a party's breach of a settlement agreement makes litigation necessary…").

Rescission is a remedy for a material breach of contract, which Plaintiff acknowledged. ECF No. 18, at 10. A breach is material when it is "so fundamental […] that the failure to perform defeats the essential purpose of the contract…" *Marion Family YMCA v. Hensel*, 178 Ohio App.3d 140, 897 N.E.2d 184, 2008 Ohio 4413, ¶7 (internal quotation marks omitted).

Plaintiff and Defendants agreed to the Second Settlement Agreement. Alexis Affidavit, Exhibit 7. Plaintiff signed the Second Settlement Agreement. Richard Deposition, 136:7-11. There is a binding contract. Defendants performed under the contract, by compensating Plaintiff. Richard Deposition, 107:8-15. Caliber was also to waive the present deferred interest balance and deferred fee balance. Richard Deposition, 109:11-18. Caliber clearly did so because none of Caliber's subsequent letters to Plaintiff reflects such an amount. Alexis Affidavit, Exhibits 9, 15-20. Furthermore, the payment history confirms that Defendants did indeed spread the escrow deficiency out of 60 months as they agreed to do. Alexis Affidavit, Exhibit 6. The undisputed evidence is that Defendants performed under the Second Settlement Agreement.

The undisputed evidence is that Plaintiff materially breached his obligations under the Second Settlement Agreement. Plaintiff agreed to a broad release, which clearly prevents

Plaintiff from continuing to challenge, after the Second Settlement Agreement, whether Plaintiff was delinquent as of the Second Settlement Agreement. In the Second Settlement Agreement, Plaintiff released Defendants "from any and all claims, causes of action, damages, liabilities, fees and expenses from the beginning of time until the Effective Date, whether known or unknown, whether arising out of or related to the Property, the Mortgage or otherwise, including those that were or which could have been brought in the Suit." Alexis Affidavit, Exhibit 7. This language is not limited to then-existing *claims*, and clearly contemplated more than just dismissal of Plaintiff's then-claims. Plaintiff's challenge to his delinquency at the time of the Second Settlement Agreement is clearly a claim, cause of action, damage or liability that Plaintiff could have asserted prior to the execution of the Second Settlement Agreement. Plaintiff has failed to abide by this release, defeating the "essential purpose" of the Second Settlement Agreement.

Plaintiff has breached the Second Settlement Agreement by sending his purported QWR, which wrongly asserts that he made all required payments during the 2014 litigation, and that his account was current. Alexis Affidavit, Exhibit 9. Plaintiff was informed before he executed the Second Settlement Agreement that neither was true. Alexis Affidavit, Exhibit 8 ("… has not made the correct full payment for some time."). Before sending the QWR, on March 31, 2015, Plaintiff, through counsel, was again informed that his account was delinquent because of short payments beginning in May 2014. Richard Deposition, 148:3-13. Plaintiff, through counsel, was also provided with his payment history and the checks showing that he paid $1,255.71 per month beginning in May 2014. ECF No. 74-1, Exhibit 16, at 156 (April 6, 2015 email sending payment history); Alexis Affidavit, Exhibit 14. Plaintiff admits the payment history is accurate. Richard Deposition, 152:9-19. Plaintiff's full monthly payment at this time was $1,470.12. Alexis Affidavit, ¶ 21. Plaintiff admits that he paid $1,255.71 per month beginning May 27, 2014.

Richard Deposition, 119:1-12. Plaintiff claims this payment was based on something that Caliber sent him something indicating a lower monthly payment amount. Richard Deposition, 116:2-6. The only such document Plaintiff identifies confirms that his monthly payment amount was $1,470.12 at this time. *See* 12/16/16 email from Christopher Gant, attached hereto as Exhibit A; Alexis Affidavit, Exhibit 4 (identical). This confirms Plaintiff's delinquency as of the Second Settlement Agreement, and was available to Plaintiff before the Second Settlement Agreement was signed. Alexis Affidavit, Exhibit 4. Furthermore, that document was sent several months prior to Plaintiff unilaterally lowering his monthly payment in May 2014. *Id.* In fact, for several months after receiving the letter, Plaintiff paid $1,470.12 per month. Alexis Affidavit, Exhibit 6. Plaintiff only began paying less during the April 2014 lawsuit against Defendants. ECF No. 74, Exhibit 11. Plaintiff paid over $200 less per month than he owed from May-October 2014. This created a delinquency, and Plaintiff was in possession of documents when he executed the Second Settlement Agreement that confirmed the delinquency. The Second Settlement Agreement does not address this deficiency, so Plaintiff's delinquency continued after the Second Settlement Agreement. Alexis Affidavit, Exhibit 7.

A challenge to Plaintiff's delinquency could have been raised before the Second Settlement Agreement, and therefore was released. By sending a purported QWR, which wrongly asserted that Plaintiff's account was current, claiming full payments during the 2014 litigation, Plaintiff violated the Second Settlement Agreement's release provision. Plaintiff sought the "complete payment history" and "the exact month(s) and amount(s) of payment(s) Defendant Caliber claimed Plaintiff did not submit…" Alexis Affidavit, Exhibit 9. This had already been provided. Richard Deposition, 151:6-25. The purported QWR attempts to force

Caliber to alter the Second Settlement Agreement or face litigation. In challenging a deficiency he waived the right to challenge, Plaintiff violated the Second Settlement Agreement.

Plaintiff's most egregious violation of the Second Settlement Agreement is this litigation. Plaintiff seeks a declaratory judgment that "Plaintiff is not in default under the terms of the note and mortgage." ECF No. 1, ¶ 137. This is a brazen attempt to have the Court set aside the terms of the Second Settlement Agreement. Plaintiff was in default before, and after, the Second Settlement Agreement. To ask the Court to waive such amounts after releasing the right to challenge them is a violation of the Second Settlement Agreement.

All of Defendants' attorney fees are attributable to Plaintiff's breach of the Second Settlement Agreement. All of Plaintiff's actions are clear attempts to circumvent the language of the Second Settlement Agreement and to seek through litigation what Plaintiff did not through negotiation, which is to have Plaintiff's 2014 delinquency waived. This is a material breach of the Second Settlement Agreement, as the broad release should be "an absolute bar" to future litigation concerning Plaintiff's delinquency as of the Second Settlement Agreement and any and all claims brought by Plaintiff in this litigation. Here, Defendants have not received the benefit of the bargain, as Plaintiff continues to litigate whether his account was delinquent as of the Second Settlement Agreement. As a result, Defendants are entitled to their attorney fees and to rescission of the Second Settlement Agreement.[2]

B. Plaintiff Has Been Unjustly Enriched by Retaining a Benefit

Unjust enrichment is an equitable non-contractual doctrine. *MVB Mortgage Corp. v. FDIC*, 2009 WL 3259413, at *3 (S.D. Ohio Oct. 6, 2009). The elements are the knowing receipt of a benefit, and the unjust retention of the benefit. *Maghie & Savage, Inc. v. P.J. Dick Inc.*, No.

---

[2] As the litigation is ongoing, the total amount of Defendants' attorney fees is presently unknown. Should the Court grant Defendants' summary judgment on this claim, Defendants will submit a request for attorney fees with supporting documentation.

08APP-487, 2009 Ohio 2164, ¶33 (Ohio Ct. App. 10th May 5, 2009). Unjust enrichment exists if the movant did not receive the full agreed-upon benefit, even if a substantial benefit was received. *See e.g. Booher Carpet Sales, Inc. v. Erickson*, No. 98-CA-0007, 1998 WL 677159, at *7 (Ohio Ct. App. 2d Oct. 2, 1998). Unjust enrichment may be maintained along with a breach of contract claim when there is evidence of bad faith. *See Resource Title Agency, Inc. v. Morreale Real Estate Services, Inc.*, 314 F.Supp.2d 763, 772 (N.D. Ohio 2004).

Plaintiff cannot retain the settlement payment he knowingly received, when Defendants did not receive the agreed-upon benefit. Richard Deposition, 107:8-15. Plaintiff cashed the settlement check and kept the money. Alexis Affidavit, ¶ 51. Plaintiff dismissed his then-pending claims, but did not abide by his broad obligation to release Defendants from then-existing claims, causes of action, damages, and liabilities. Alexis Affidavit, Exhibit 7. This required not challenging his deficiency as of the Second Settlement Agreement. Plaintiff still does so. ECF No. 1. Plaintiff was sent the settlement check after January 5, 2015. Alexis Affidavit, ¶ 49. Plaintiff was again informed on December 22, 2014 of his delinquency. Alexis Affidavit, ¶ 50; ECF No. 74-1, Exhibit 16, at 170 ("He is due for Nov & Dec payments. He has $1,255.71 in suspense so he'll need to send in around $120 to make the Nov payment. He is also past due for December."). Despite this, and despite not knowing whether he was delinquent as of the Second Settlement Agreement, Plaintiff cashed the check and kept the money. Richard Deposition, 110:25-111:4. This is bad faith. Defendants are entitled to summary judgment on this claim.

C. The Court Should Enjoin Plaintiff from Future Litigation Against Defendants

An injunction against future litigation prevents a party from filing "duplicative lawsuits against the same defendant." *Marbly v. Kay*, 2000 WL 1827783, at *2 (6th Cir. Dec. 8, 2000). There is "nothing unusual about imposing pre-filing restrictions in matters with a history of

repetitive or vexatious litigation." *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998). Courts impose injunctions against future litigation when the litigant files suit in contravention of an adjudication on the merits. *Marbly*, 2000 WL 1827783, at *2.

Plaintiff has sued three times regarding his account, leading to two settlement agreements with broad releases. ECF No. 74-1, Exhibit 5; Alexis Affidavit, Exhibit 7. Despite this, Plaintiff continues to sue. Plaintiff has engaged in duplicative litigation. Defendants are entitled to summary judgment and it would be "nothing unusual" to enjoin Plaintiff from suing a fourth time in contravention of settlements and the Court's ruling. A pre-filing restriction is appropriate.

D.  Defendants are Entitled to Summary Judgment on Plaintiff's FDCPA Claim

Plaintiff does not allege that the VOLT RPL XI Asset Holdings Trust (the "Trust") is liable under the FDCPA. Plaintiff seeks liability against Caliber, under 15 USC § 1692f of the FDCPA, for attempting to collect amounts not expressly authorized. ECF No. 1, ¶ 114. The FDCPA prohibits collection of amounts which are not "expressly authorized by the agreement creating the debt or permitted by law." 15 USC § 1692f(1). Plaintiff must prove that he did not owe the amounts Caliber sought to collect. *See Dowling v. Litton Loan Servicing, LP*, 2007 WL 7020413, at *7 (S.D. Ohio Jun. 5, 2007). Caliber sought to collect amounts owed by Plaintiff because of short payments in 2014, thus there was no violation of the FDCPA.

From January 2014 to October 2014, Plaintiff owed $1,470.12 per month, and was so notified. Alexis Affidavit, ¶¶ 19-20, Exhibit 4. Plaintiff paid $1,255.71 per month beginning May 27, 2014. Alexis Affidavit, Exhibit 6; Richard Deposition, 119:1-12. Plaintiff's monthly payments from May-October 2014 were over $200 short. This created a deficiency of $1,493.45 on December 17, 2014. Alexis Affidavit, ¶ 27. When Plaintiff executed the Second Settlement Agreement, Plaintiff owed that amount. No provision in the Second Settlement Agreement

waives Plaintiff's 2014 delinquency due to short payments. Alexis Affidavit, Exhibit 7. Plaintiff cannot identify any such language. Richard Deposition, 108:25-110:24. Plaintiff's delinquency continued after the Second Settlement Agreement.

Plaintiff has identified two amounts which Caliber allegedly sought to collect in violation of the FDCPA. Plaintiff claims that a mortgage statement showed an arrearage of $2,749.16. ECF No. 1, ¶ 54. Plaintiff notes that Caliber clarified that Plaintiff had an "unpaid balance" of $1,123.10, owed $1,626.06. ECF No. 1, ¶ 68. These amounts are confirmed by the payment history. Alexis Affidavit, Exhibit 6. The payment history accurately reflects Plaintiff's payments. Richard Deposition, 113:8-13. Plaintiff's deficiency of $1,493.45 on December 17, 2014 grew to $1,626.06 several months later. Alexis Affidavit, ¶ 27; Exhibits 6, 15-19. Plaintiff has produced no contrary evidence. Defendants are entitled to summary judgment on this theory.

Plaintiff alleges Caliber violated 15 USC § 1692e by sending "false and/or misleading" statements. ECF No. 1, ¶ 113. Plaintiff claims Caliber violated 15 USC § 1692e(2)(A), 15 USC § 1692e(2)(5) and 15 USC § 1692e(10). Plaintiff must show a false statement that was deceptive or misleading. *Turner v. Lerner, Sampson & Rothfuss*, 776 F.Supp.2d 498, 505 (N.D. Ohio 2011) A statement "false in some technical sense" is not actionable if not misleading. *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009).

15 USC § 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt…" A "notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Federal Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 512 (6th Cir. 2007) (internal citation omitted). Courts also evaluate potential FDCPA liability through the eyes of the "least sophisticated consumer" who "can be presumed to possess a rudimentary amount of information about the world and a

11

willingness to read the collection notice with some care." *Michael v. Javitch, Block & Rathbone, LLP*, 825 F.Supp.2d 913, 919 (N.D. Ohio 2011) (internal citation omitted).

There were no false or deceptive representations. Plaintiff made partial payments from May-October 2014 creating a deficiency not waived by the Second Settlement Agreement. Caliber accurately stated the amounts owed. Reading all the statements "with some care," the statements are not deceptive or misleading. The communications show a total amount past due of $2,749.16, but an arrearage, the amount owed, of $1,626.06 plus unapplied funds of $1,123.10. Alexis Affidavit, Exhibits 15-19. Any confusion was put to rest by Caliber's May 22, 2015 letter, which clarifies the relationship between these amounts. Alexis Affidavit, Exhibit 20. In addition, Plaintiff had previously been provided, through counsel, with the payment history, which shows the amount of unapplied funds, and the checks confirming the accuracy of the payment history. ECF No. 74-1, Exhibit 16, at 156 (payment history sent April 6, 2015); Alexis Affidavit, Exhibit 14 (checks sent April 17, 2015). The communications are not deceptive.

15 USC § 1692e(5) prohibits "[t]he threat to take any action that cannot legally be taken…" Threats are "an indication of something impending." Merriam Webster, <https://www.merriam-webster.com/dictionary/threat>. To find liability courts require "language that would lead a consumer to believe the legal right would be exercised…" *Barany-Snyder v. Weiner*, 2007 WL 210411, at *8 (N.D. Ohio Jan. 24, 2007).

Caliber's communications to Plaintiff did not include threats. Caliber's communications state that Plaintiff's failure to pay amounts owed *may* result in foreclosure. Alexis Affidavit, Exhibit 19 (emphasis added). Caliber states that it *may* report the alleged default to credit reporting agencies. Alexis Affidavit, Exhibit 16 (emphasis added). Neither statement is a threat

because neither suggests imminent action. Beyond that, Plaintiff was in default and therefore Caliber could take these actions at an appropriate future time.

E. Defendants are Entitled to Summary Judgment on Plaintiff's RESPA Claim

As an initial matter, Defendants had no duty to respond to Plaintiff's purported QWR. The duties to respond to borrower inquiries under RESPA only apply to servicers. *See generally* 12 USC § 2605(e); 12 CFR 1024.35. Therefore, the Trust, as the assignee of Plaintiff's mortgage loan, has no duty, under RESPA, to respond to Plaintiff's purported QWR. Alexis Affidavit, ¶ 2.

Caliber had no duty to respond to the purported QWR. The CFPB's Regulation X, implementing RESPA, provides that a servicer may "establish an address *that a borrower must use* to submit a notice of error..." 12 CFR 1024.35 (emphasis added). Courts have routinely found that servicers had no duty to respond to QWRs not sent to the designated address. *See e.g. Jestes v. Saxon Mortg. Services*, 2014 WL 1847806, at *6 (M.D. Tenn. May 8, 2014); *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 182 (2d Cir. 2014). Courts continue to find that the "response obligation under RESPA is only triggered when a plaintiff sends a QWR to the designated address." *Dale v. Selene Finance LP*, 2016 WL 6024580, at *6 (N.D. Ohio Oct. 14, 2016) (appeal pending). Otherwise, there is no response obligation.

Plaintiff did not send his purported QWR to Caliber's designated address. Plaintiff did not send his purported QWR to Caliber, but instead to Defendants' counsel. Alexis Affidavit, ¶¶ 40-41, Exhibit 9. Caliber was under no duty to respond.

However, even if Caliber had to respond to the purported QWR, Caliber did so appropriately. RESPA requires one of three QWR responses: 1) make appropriate corrections and notify the borrower; 2) after an investigation, provide a written explanation why the servicer believes the amount is correct; or 3) after an investigation, provide a written explanation why

requested information is unavailable. 12 USC §§ 2605(e)(2)(A)-(C). A servicer has 30 business days to respond. 12 USC § 2605(e)(2). There is no need to "correct" a correct account. *See Hittle v. Residential Funding Corp.*, 2014 WL 3845802 at *12 (S.D. Ohio, Aug. 5, 2014).

Any of the three statutory responses may be valid. *Id.* at *8. The circumstances dictate the appropriate response. *Id.* (internal citation omitted). A sufficient QWR response must "fairly meet the substance of the QWR." *Id.* at 9 (internal citations omitted). Servicers may not respond with "an utterly generic form letter." *Id.* at 12. However, an investigation and response to the specific allegations in good faith complies with a servicer's RESPA obligations. *Id.* at 12.

QWRs must relate to the servicing of the loan, and challenges to the validity of a loan or requests for origination documents are not properly the subject of a QWR. *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666-667 (9th Cir. 2012); *Jestes*, 2014 WL 1847806, at *7. As a result, courts have found that, when included in a QWR, requests for information about the owner of the note are "tertiary" and "do not relate to servicing." *Smallwood v. Bank of America, N.A.*, 2015 WL 7736876, at *8 (S.D. Ohio Dec. 1, 2015) (internal citation omitted). Therefore, "no violation may be based on the allegation that Defendant improperly identified the owner of the Smallwoods' note." *Id.* Servicers are also under no duty to respond to duplicative QWRs. 12 CFR 1024.36(f)(1)(i). When a servicer has previously identified the owner of the obligation, the servicer need not do so again. *Wood v. Green Tree Servicing LLC*, 2016 WL 2894120, at *7 (N.D. Al. May 18, 2016).

In addition to proving that Caliber violated RESPA, Plaintiff must also prove that Plaintiff suffered resulting damages. *McMillen v. Resurgent Capital Services, L.P.*, 2015 WL 5308236, at *10 (S.D. Ohio Sept. 11, 2015). In certain circumstances, the costs of preparing a QWR can be actual damages. *Marais v. Chase Home Finance LLC*, 736 F.3d 711, 721 (6th Cir.

2013). However, the actual damages in *Marais* were "that Chase's failure to respond resulted in continued prejudicial practices, costing the plaintiff money." *Martini v. JPMorgan Chase Bank, N.A.*, 634 Fed.Appx. 159, 164 (6th Cir. 2015). In other words, because the QWR correctly pointed out an error in the account, the costs of preparing the QWR counted as actual damages.

Caliber's response to Plaintiff's purported QWR was sufficient. The purported QWR wrongly claimed that Plaintiff had made all payments during the 2014 litigation and that Plaintiff's account was correct. *See* Alexis Affidavit, Exhibit 9. Plaintiff was informed even before executing the Second Settlement Agreement that this was incorrect. Alexis Affidavit, Exhibit 8 ("… has not made the correct full payment for some time."). In addition, before Plaintiff's purported QWR, Plaintiff was again, through counsel, informed of the basis for the deficiency—namely his short payments in 2014, including the amounts owed and the amounts paid, including copies of checks and a payment history, which Plaintiff reviewed. ECF No. 74-1, Exhibit 16, at 156 (April 6, 2015 email sending payment history) and 152-153 (April 17, 2015 providing checks confirming delinquency); Richard Deposition, 151:6-25. Plaintiff admits the payment history matches the checks that he sent to Caliber. Richard Deposition, 152:9-19. Further, Plaintiff has no evidence to support his belief that his monthly payment decreased from $1,470 to $1,255 per month in May 2014. Exhibit A; Alexis Affidavit, Exhibit 4. Plaintiff's purported QWR was based on Plaintiff's mistaken, and by then already-discredited, argument that Plaintiff had made all of his payments during the 2014 litigation. Alexis Affidavit, Exhibit 9.

The circumstances dictate the appropriate QWR response. *See Hittle*, 2014 WL 3845802 at *8 (S.D. Ohio, Aug. 5, 2014). (internal citation omitted).  Here, Plaintiff claimed that his account was incorrect based on the already-discredited argument that he made all required payments during the 2014 litigation. Alexis Affidavit, Exhibit 9. Caliber had already informed

Plaintiff that his deficiency was due to short payments in 2014 and provided Plaintiff with a confirming payment history and check copies. ECF No. 74-1, Exhibit 16, at 153. What more could Caliber do? Caliber conducted an investigation, and explained once more why Plaintiff's account was accurate. Alexis Affidavit, Exhibit 20. Even before that, Caliber sent five different letters to Plaintiff to respond to the various issues related to the administration of Plaintiff's account. Alexis Affidavit, Exhibits 15-19. Plaintiff may not agree with Caliber's explanation, but it is clear that Caliber sufficiently responded to Plaintiff's purported QWR under RESPA.

The purpose of the purported QWR was to challenge Plaintiff's deficiency. This was Plaintiff's concern in sending the purported QWR and upon receiving the response. Richard Deposition, 154:13-17, 157:18-158:2. Nevertheless, Plaintiff's purported QWR also included eleven requests for information. Alexis Affidavit, Exhibit 9. Seven requests were previously answered, leaving four non-duplicative requests (requests 1, 2, 8 and 11). Alexis Affidavit, Exhibits 9, 10, 12. Requests 1 and 2 sought information previously provided by Defendants' counsel. ECF No. 74-1, Exhibit 16, at 156 (April 6, 2015 email sending payment history) and 152-153 (April 17, 2015 email with checks confirming delinquency). Plaintiff had been informed that he was delinquent because of his 2014 payments, he just didn't like the answer. *Id.* Plaintiff had been provided a payment history, which showed all fees, charges and advances from December 17, 2014 to the present. ECF No. 74-1, Exhibit 16, at 156; Alexis Affidavit, Exhibit 6. Request 8 sought a reinstatement amount, which was provided. Alexis Affidavit, Exhibits 9, 16-17. Request 11 sought Caliber's preferred address for QWRs, though Plaintiff made no effort to send the purported QWR to Caliber's designated address. Alexis Affidavit, Exhibit 9.

Despite all of this, Caliber responded to each and every request with a point by point response and supporting documentation. Alexis Affidavit, Exhibit 20. This was not a generic

form letter and fairly met the substance of the purported QWR. Caliber sent a series of letters addressing the various concerns raised in the purported QWR. Alexis Affidavit, Exhibits 15-20. This is exactly the kind of response that, by responding to each numbered paragraph, is sufficient. *Hittle*, 2014 WL 3845802, at *12 ("A borrower cannot hold a servicer liable for failing to completely respond to every possible interpretation of a generic and vague QWR when the servicer has responded with a good faith investigation and explanation.").

Any argument for liability based on the alleged failure to identify the owner or master servicer must fail. This is a "tertiary" issue not related to loan servicing. *Smallwood*, 2015 WL 7736876, at *8 (S.D. Ohio Dec. 1, 2015). This is particularly true where, as here, Plaintiff's concern was whether or not his account was in default. Richard Deposition, 97:12-98:8; 154:13-17. Beyond that, the identification of a trust is a proper identification of the owner of the obligation. *Justice v. Ocwen Loan Servicing*, 2015 WL 235738, at *14 (S.D. Ohio Jan. 16, 2015). On April 21, 2015, Caliber identified itself as the servicer, on behalf of the Trust, identifying the Trust as the owner of Plaintiff's obligation six days after the purported QWR. Alexis Affidavit, Exhibit 16; Alexis Affidavit, Exhibit 9. Having identified the Trust, Caliber need not do so again. *Wood,* 2016 WL 2894120, at *7. The Trust was a represented party facing the threat of litigation. The appropriate address and telephone number were Defendants' counsel's address and telephone number. *See* Ohio Rule of Disciplinary Conduct Rule 4.2.

Beyond that, Caliber had previously responded to an identical inquiry in response to a prior QWR. Alexis Affidavit, Exhibit 12. In doing so, Caliber identified the owner of Plaintiff's obligation as "Vericrest Opportunity Loan Trust RPL XI Asset Holdings Trust," the same entity Caliber identified in its April 21, 2015 letter. Alexis Affidavit, Exhibits 12-16. In response to the prior QWR, Caliber identified itself as the servicer and provided its address and phone number.

Alexis Affidavit, Exhibit 12. Caliber's same address and phone number were again provided to Plaintiff on April 21, 2015. Alexis Affidavit, Exhibit 16. Given this, Plaintiff cannot demonstrate any damages resulting from the alleged failure to identify the owner or master servicer.

F.  Defendants are Entitled to Summary Judgment on Plaintiff's TILA Claim

TILA requires that "the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation." 15 USC § 1641(f)(2). Identifying a trust is sufficient to identify the trust as the owner of the obligation. *Justice*, 2015 WL 235738, at *14.

As explained above, Caliber timely identified the Trust. The appropriate phone number and address for the Trust, a represented party, were Defendants' counsel's phone number and address. *See* Ohio Rule of Disciplinary Conduct Rule 4.2. Plaintiff and Plaintiff's counsel knew Defendants' counsel's address and phone number. Alexis Affidavit, Exhibit 9. Beyond that, the name of the Trust and Caliber's address and phone number were repeatedly provided to Plaintiff. Alexis Affidavit, Exhibits 12 and 16. This Court should not countenance an attempt to create liability by inserting a TILA demand into a purported QWR wrongly challenging Plaintiff's deficiency, when Plaintiff's only concern was his deficiency and Plaintiff had already been provided the requested information. The Court should grant summary judgment on this claim.

G.  The Court Should Grant Summary Judgment on Plaintiff's Declaratory Judgment Claim

Plaintiff is not entitled to a declaratory judgment under either Ohio law or federal law. Under Ohio law, declaratory relief is a way to "eliminate uncertainty regarding [parties] legal rights and obligations." *See Mid-American Fire and Cas. Co. v. Heasley*, 113 Ohio St.3d 133, 863 N.E.2d 142, 2007-Ohio-1248, ¶ 8. To be entitled to declaratory relief, a party must show "(1) a real controversy exists between the parties, (2) the controversy is justiciable in character,

and (3) speedy relief is necessary to preserve the rights of the parties." *Aust v. Ohio State Dental Bd.,* 136 Ohio App.3d 677, 681, 737 N.E.2d 605 (10th Dist. 2000). Declaratory relief requires that "[t]he danger or dilemma of the plaintiff must be present, not contingent on the happening of hypothetical future events […] the threat to his position must be actual and genuine and not merely possible or remote." *League for Preservation of Civil Rights v. Cincinnati*, 64 Ohio App. 195, 197, 28 N.E.2d 660 (1st Dist. 1940) (internal citation omitted). The controversy must have "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Burger Brewing Co. v. Liquor Control Comm.,* 34 Ohio St.2d 93, 97, 296 N.E.2d 261 (1973).

Federal law also requires "sufficient immediacy and reality to warrant the issuance of declaratory judgment." *See City of Parma, Ohio v. Cingular Wireless, LLC*, 2008 WL 2178108, at *5 (6th Cir. May 23, 2008). (internal citations omitted). Past injury cannot confer standing. *See Fieger v. Mich. Supreme Court*, 553 F.3d 955, 962 (6th Cir. 2009). In deciding whether to address such a claim, the Sixth Circuit asks courts to consider, as one factor, "whether there is an alternative remedy which is better or more effective." *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (internal citation omitted). Furthermore, "declaratory judgment is a distinct concept from relief in the form of monetary damages." *Berkshire Life Insurance Company of America v. Seaton*, 2014 WL 11511061, at *6 (E.D. Tenn. Jun. 12, 2014) (citing *Adrian Energy Assoc. v. Mich. Pub. Serv. Comm'n*, 481 F.3d 414, 422 (6th Cir. 2007).

Plaintiff is not entitled to a declaratory judgment as to the owner of the mortgage, because there is no need for speedy relief. There is no pending foreclosure action. Caliber is the servicer of Plaintiff's loan and Caliber collects Plaintiff's payments. Alexis Affidavit, ¶ 3. Plaintiff continues to submit payments, though his account is delinquent because of the 2014 payments. Alexis Affidavit, Exhibit 6. The Trust owns Plaintiff's mortgage. Alexis Affidavit, ¶

19

2. Caliber so informed Plaintiff in 2013 and again on April 21, 2015. Alexis Affidavit, Exhibits 12, 16. The Court need not issue a declaratory judgment as to the owner of Plaintiff's mortgage, but if it does, the undisputed evidence is that the Trust is the owner of Plaintiff's mortgage.

Plaintiff is not entitled to a declaratory judgment that he is not in default, because he is in default. Plaintiff's default is at issue in Defendants' breach of contract claim, which includes alternative (monetary) remedies. *Grand Trunk W. R.R. Co.*, 746 F.2d at 326. The declaratory judgment Plaintiff seeks is not "distinct" from monetary relief. *Berkshire Life Insurance*, 2014 WL 11511061, at *6. Plaintiff's deficiency is a monetary question to be decided in Defendants' breach of contract claim, not a declaratory judgment.

H. Conclusion

Plaintiff is delinquent because of partial payments in 2014. Plaintiff, through counsel, was informed of this before executing the Second Settlement Agreement. The Second Settlement Agreement did not waive the delinquency, so Plaintiff still owes it. Nonetheless, through a purported QWR and this litigation, Plaintiff seeks to avoid his obligation to pay. Plaintiff should not be so rewarded. The Court should grant Defendants summary judgment on all counts.

Respectfully Submitted,

*/s/ Robert C. Folland*
Robert C. Folland (0065728)
David J. Dirisamer (0092125)
BARNES & THORNBURG LLP
41 S. High St. Suite 3300
Columbus, Ohio 43215
Phone: (614)-628-1429
Fax: (614)-628-1433
rob.folland@btlaw.com
david.dirisamer@btlaw.com
*Attorneys for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 17, 2017, a copy of the forgoing was served via the

Court's CM/ECF system upon all counsel of record.

<div style="margin-left:40%">

*/s/ Robert C. Folland*
Robert C. Folland

</div>