## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

DENNIS G. RICHARD,

      Plaintiff,

                                       Civil Action 2:15-cv-02647
    v.                          Chief Magistrate Judge Elizabeth P. Deavers

CALIBER HOME LOANS, INC., *et al.*,

      Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff's Motion for Attorney Fees pursuant to 15 U.S.C. § 1692k, 15 U.S.C. § 1640(a), 12 U.S.C. § 2605(f), and Ohio Revised Code § 2323.51 (ECF No. 122), Defendants' Memorandum in Opposition (ECF No. 124), and Plaintiff's Reply (ECF No. 125).  For the following reasons, Plaintiff's Motion is **GRANTED IN PART.**  Plaintiff shall be **AWARDED** a total of **$29,207.46** in attorney fees and costs.

## I.  BACKGROUND

Plaintiff initiated this action on July 23, 2015.  (ECF No. 1.)  The case arises from a mortgage obtained by Plaintiff for a home he purchased in 2005.  (*Id.* at ¶ 23.)  Notably, this is Plaintiff's third lawsuit against Defendant Caliber Home Loans ("Caliber") relating to their servicing of his mortgage.  The previous two lawsuits resulted in settlements and dismissals of Plaintiff's claims.  Here, Plaintiff alleged violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*  The

Court granted Defendants' Motion for Summary Judgement on Plaintiff's RESPA claim. (ECF No. 110.)

On August 3, 2018, Plaintiff filed a Notice of Acceptance of Offer of Judgment (ECF No. 121), giving formal notice of his acceptance of Defendants' Offer of Judgment made on July 20, 2018. On the same day, the Court conducted a status conference in which the Court directed counsel to make an effort to come to an agreement as to attorney fees and directed Plaintiff to file a motion within thirty (30) days if the parties were unable to compromise. (ECF No. 120.) Plaintiff filed a Motion for Attorney Fees pursuant to 15 U.S.C. § 1692k, 15 U.S.C. § 1640(a), 12 U.S.C. § 2605(f), and R.C. § 2323.51 on September 4, 2018 seeking $207,949.40 in attorney fees and $3,918,02 in costs, totaling $211,867.42. (ECF No. 122.) On September 10, 2018, the Court issued judgment in this case pursuant to the filing of the Notice of Acceptance with Offer of Judgment filed on August 3, 2018. (ECF No. 123.) The Court entered judgment in the amount of $15,000.00, plus reasonable costs and attorney's fees, incurred by Plaintiff on or before the date of the making of the Offer of Judgment, in an amount to be determined by the Court. (*Id.*) Defendants filed their Memorandum in Opposition to Plaintiff's Motion for Attorney Fees on September 25, 2018, requesting that the Court award Plaintiff's counsel no more than $19,999.15 in attorney fees and costs. (ECF No. 124.) Plaintiff filed his Reply on October 9, 2018. (ECF No. 125.)

## II. STANDARD OF REVIEW

Typically, litigants are "responsible for their own attorney fees irrespective of the outcome of civil proceedings." *Lee v. Javitch, Block & Rathbone, LLP*, 568 F. Supp. 2d 870, 873 (S.D. Ohio 2008). Congress, however, has legislated exceptions to this general rule "whereby prevailing parties may seek to recover costs from their opposition in an attempt to

encourage consumers to act as private attorneys general." *Id.* (quoting *Mann v. Acclaim Fin. Servs. Inc.*, 348 F. Supp. 2d 923, 927 (S.D. Ohio 2004)) (internal quotations omitted). One such exception is the FDCPA, which provides "that a successful plaintiff is entitled to recovery from the defendant the costs of the action, together with a reasonable attorney's fee as determined by the court." *Id.* (quoting 15 U.S.C. § 1692k(a)(3)) (internal quotations omitted). "The FDCPA mandates the award of a reasonable attorney's fee and costs to a prevailing party." *Dowling v. Litton Loan Serv. LP*, 320 Fed. App'x 442, 446 (6th Cir. 2009) (citing 15 U.S.C. § 1692k(a)(3) and *Lee v. Thomas & Thomas*, 109 F.3d 302, 307 (6th Cir. 1997)) (internal quotations omitted). The party seeking attorney's fees under a federal fee-shifting statute such as the FDCPA bears the burden to show he is entitled to the amount requested. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999) (citations omitted). "The fees requested should be documented, and, where they are not, the district court may reduce the award accordingly." *Derry v. Buffalo & Assoc., PLC*, No. 2:12-cv-303, 2014 WL 4450146, at *2 (E.D. Tenn. Sept. 10, 2014) (citations omitted). Likewise, the TILA also permits recovery of reasonable attorney's fees and costs. *Purtle v. Eldridge Auto Sales, Inc.*, 91 F.3d 797, 800 (6th Cir. 1996) (citing 15 U.S.C. § 1640(a)(3)).

"Attorney's fees for successful litigants under federal fee shifting statutes are commonly calculated using the 'lodestar' method[.]" *Derry*, 2014 WL 4450146 at *2. The lodestar amount is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Imwalle v. Reliance Med. Prods. Inc.*, 515 F.3d 531, 551–52 (6th Cir. 2008) (citing *Hensley*, 461 U.S. at 433). In the Sixth Circuit, district courts apply a lodestar calculation based on the "prevailing market rate in the relevant community" when considering the reasonableness of the fee award. *Smith v. Serv. Master Corp.*, 592 F. App'x 353, 369 (6th

Cir. 2014) (citing *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)).  The calculation considers "the number of hours reasonably spent on the case by an attorney times a reasonable hourly rate."  *Smith*, 592 F. App'x at 369.  The resulting sum may be adjusted to reflect factors such as the "results obtained."  *Hensley*, 461 U.S. at 434 (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)); *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 621 (6th Cir. 2007).  "Determining a 'reasonable attorney's fee' is a matter that is committed to the sound discretion of a trial judge."  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 558 (2010) (citation omitted).  However, "the judge's discretion is not unlimited."  *Id.*

Alhough the lodestar method is the appropriate starting point for determining attorney's fees, the inquiry does not end there.  *See Reed*, 179 F.3d at 472.  Other considerations may lead a district court to adjust the fee.  *See id.*  The most critical factor in determining the reasonableness of a fee award is "the degree of success obtained."  *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (citing *Hensley*, 461 U.S. at 436); *see also Cramblit v. Fikse*, 33 F.3d 633, 635 (6th Cir. 19994).  If the purpose of the litigation is to recover damages, "the district court must consider the amount and nature of damages awarded when determining attorney's fees."  *Derry*, 2014 WL 4450146 at *2 (citing *Farrar*, 506 U.S. at 115; *Cramblit*, 33 F.3d at 635).  If the plaintiff "achieves only partial success against the defendant, the district court must consider whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award."  *Id.* (citing *Hensley*, 461 U.S. at 434.)

Importantly, "federal fee shifting statutes do not provide for enhancements of fees in order to compensate for the risk of nonpayment when an attorney takes a case on a contingency basis."  *Id.* at *3 (citing *City of Burlington v. Dague*, 505 U.S. 557, 561–63 (1992) (federal fee

shifting statutes which authorize a court to award "reasonable attorney's fees" to a "prevailing or substantially prevailing party" do not authorize fee enhancements for the purpose of compensating attorneys hired on a contingency basis for the risk of loss); *Davis v. Mutual Life Ins. Co. of New York*, 6 F.3d 367, 381 (6th Cir. 1993) (holding no fee enhancement due to counsel for taking a case which impinges significantly on a small practice's ability to take other cases); *Coulter v. Tennessee*, 805 F.2d 146, 149 n.4 (6th Cir. 1986) ("In short, the lodestar figure includes most, if not all, of the relevant factors comprising a 'reasonable' attorney's fee, and it is unnecessary to enhance the fee for superior performance in order to serve the statutory purpose of enabling plaintiffs to secure legal assistance.") (citation omitted)).

"After calculating the lodestar, the court may modify the amount by applying the factors listed in Ohio Rule of Professional Conduct 1.5(a)." *Braun v. Ultimate Jetcharters, Inc.*, No. 5:12-cv-1635, 2014 WL 3749418, at *13 (N.D. Ohio July 30, 2014). The factors include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

Ohio R. Prof'l Conduct 1.5(a)(1)–(8).

# III. ANALYSIS

Plaintiff seeks $207,949.40 in attorney fees and $3,918,02 in costs, totaling $211,867.42. (ECF No. 122.)  Defendants request that the Court award Plaintiff's counsel no more than $19,999.15 in attorney fees and costs.  (ECF No. 124.)  The Court takes up three initial matters before addressing the lodestar calculation.

## A. Costs and Fees Incurred After July 20, 2018

The Court's Judgment indicates that "judgment is entered in the amount of $15,000.00, plus reasonable costs and attorney's fees, *incurred by Plaintiff on or before the date of the making of the Offer of Judgment*, in an amount to be determined by the Court."  (ECF No. 123 (emphasis added).)  Defendant made the Offer of Judgment on July 20, 2018.  (ECF No. 121.)  Plaintiff has submitted billing records including a total of 27.36 hours billed after July 20, 2018. (ECF No. 122-4, at PAGEID # 3401–03.)  Under the Court's Order, Plaintiff cannot recover fees associated with those 27.36 hours.[1]  Additionally, Plaintiff seeks a total of $2,500.00 in costs incurred on August 30, 2018.  (*Id.* at PAGEID # 3404.)  Because the Court limited Plaintiff to any costs incurred prior to the July 20, 2018 offer of judgment, Plaintiff cannot recover this $2,500.00 cost.  This deduction brings Plaintiff's recoverable costs to $1,418.02.

---

[1] Plaintiff asserts that he is entitled to collect these hours because he is the "prevailing party." (ECF No. 125, at pg. 18.)  He cites *Kahlil v. Original Old Homestead Rest, Inc.*, 657 F. Supp. 2d 470, 474 (S.D.N.Y. 2009), a case not binding on this Court, in support of the assertion that "[i]rrespective of any disclaimer in an offer of judgment, once accepted the plaintiff is the 'prevailing party' for purposes of being awarded its costs[.]"  (*Id.*)  The Court in *Kahlil* found that a disclaimer of liability in the *offer of judgment* did not suffice to keep plaintiff from being considered the prevailing party. 657 F. Supp. 2d at 474.  *Kahlil* is inapposite in this case. Here, the Court's Judgment, and not the *offer of judgment*, placed the limitation on what Plaintiff could collect.  Accordingly, Plaintiff's argument that he is entitled to costs and fees incurred after July 20, 2018 fails.

### B. December 12, 2016 Billing Entry

Plaintiff is seeking to recover fees for 6.9 hours on December 12, 2016 for time spent for "[c]lient deposition with prep." (ECF No. 124, at pg. 13 (citing ECF No. 122-4, at PAGEID # 3394).) Neither Plaintiff nor any other witness, however, was deposed on December 12, 2016. Rather, the parties conducted Plaintiff's deposition on December 8, 2016. (*See* ECF Nos. 73 & 83-2.) Indeed, Plaintiff submitted a billing entry of 8 hours for December 8, 2016 with a description of "Richard Prep & Depo (miscellaneous expense) Parking – Deposition of Client (TJD) (miscellaneous expense) Meals – Deposition of Client (TJD) Mileage to/from Dublin, OH to Franklin County Common Pleas; Deposition of Client (TJD)." (ECF No. 122-4, at PAGEID # 3394.) Plaintiff appears to admit this entry is a billing mistake. (*See* ECF No. 125, at pg. 15 n.10 ("Caliber also attempts to argue that a single billing entry renders the entire fee report unreliable. This is a dramatic overreaction and instead the proper route is to reduce the fee award by the billing entry mistake.".) Accordingly, Plaintiff cannot recover fees for 6.9 hours on December 12, 2016.

### C. Ohio Revised Code § 2323.51

Plaintiff asserts that his counsel should be awarded attorney's fees under Ohio Revised Code § 2323.51. (ECF No. 122, at pg. 13–14.) Specifically, Plaintiff asserts that the counterclaims filed by Defendants are "frivolous conduct" under O.R.C. § 2323.51. (*Id.*) "Section 2323.51 of the Ohio Revised Code provides that the court may award reasonable attorney fees to any party to that action adversely affected by frivolous conduct." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 529 (6th Cir. 2002) (citing O.R.C. § 2323.51(B)(1)). The statute "defines frivolous conduct as litigation that: (1) obviously serves merely to harass or maliciously injure another party; or (2) is not warranted under existing law

and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law." *Id.* (citing O.R.C. § 2323.51(A)(2)(a) & (b)).

The United States Court of Appeals for the Sixth Circuit has indicated that

> [u]nder *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a federal court sitting in diversity must apply state substantive law, and federal procedural law. The Supreme Court has also observed that "'(i)n an ordinary diversity case where the state law does not run counter to a valid federal statute, . . . state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed.'" *Alyeska Pipeline Co. v. Wilderness Soc'y,* 421 U.S. 240, 260, n.31, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (quoting 6 J. Moore, federal practice and procedure § 54.77(2), pp. 1712–1713 (2d ed.1974) (footnotes omitted)). Yet, "[a]s one treatise remarked, 'If the [federal] Rule speaks to the point in dispute and is valid, it is controlling, and no need be paid to contrary state provisions.'" *Exxon Corp. v. Burglin,* 42 F.3d 948, 950 (5th Cir.1995) (quoting 19 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, federal practice and procedure § 4508 (1982)).

*Id.* at 528–29. The Court of Appeals has found that O.R.C. § 2323.51 is procedural in nature. *Id.* at 529. Under *Erie*, therefore, Federal Rule of Civil Procedure 11 "should govern the award of sanctions for frivolous conduct." *Id.* Indeed, the Court of Appeals has found that O.R.C. § 2323.51 conflicts with the procedural requirements of Rule 11 because "the Ohio statute does not have a safe harbor provision similar to Rule 11[.]"[2] *Id.* at 530. Accordingly, Plaintiff cannot recover under O.R.C. § 2323.51.[3]

---

[2] Plaintiff incorrectly states that "Federal Rule of Civil Procedure 11 and R.C. 2323.51 do not conflict." (ECF No. 125, at pg. 20.) Plaintiff makes this assertion even though he cites to *First Bank of Marietta* on the previous page, which is a case that explicitly finds Rule 11 and O.R.C. § 2323.51 do indeed conflict. (*Id.* at pg. 19.)

[3] In any event, Plaintiff has already lost on the argument that the counterclaims were frivolous and violated Rule 11. The Court rejected Plaintiff's assertions and denied his Motion for Sanctions for this conduct. (ECF Nos. 94 and 108.)

**D. Lodestar Calculation**

As an initial matter, Plaintiff characterizes the lodestar calculation in his Motion for Attorney Fees as calculating the amount "by multiplying the hours billed on the matter by the rate at which the attorney bills." (ECF No. 122, at pg. 5.) This assertion is incorrect. As *Hensley* instructs, "the amount of a reasonable fee is the number of hours *reasonably* expended on the litigation multiplied by a *reasonable* hourly rate." 461 U.S. at 433 (emphasis added). The standard is not, as Plaintiff asserts, the actual hours billed multiplied by the attorney's actual rate.[4] Rather, both parts of the calculation take reasonableness into account.

*1. Reasonableness of the Rates*

In determining what constitutes a reasonable hourly rate, "courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (citing *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)). In an attorney's fee case, "the primary concern is that the fee awarded be 'reasonable.'" *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007) (citations omitted). "A reasonable fee is 'adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers.'" *Id.* (quoting *Geier*, 372 F.3d at 791). As the United States Court of Appeals for the Sixth Circuit has explained,

> the appropriate rate is not necessarily the exact rate of a particular firm, but the market rate in the venue sufficient to encourage competent lawyers in the relevant community to undertake legal representation. *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007). A district court may look to "a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Van Horn v. Nationwide Pro. &*

---

[4] Despite this assertion, Plaintiff later suggests that the proper lodestar calculation in this case should be to multiply his attorneys and paralegals' hours by rates much higher than anyone actually billed Plaintiff. (*See* ECF No. 122, at pg. 4–5.)

*Cas. Ins.*, 436 F. App'x 496, 499 (6th Cir. 2011). Furthermore, while the district court may take into consideration an attorney's skill level in identifying the market rate, this Circuit holds that "reasonable" fees need not be "liberal" fees, and that "[s]uch fees are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region." *Coulter*, 805 F.2d at 149.

*The Ne. Ohio Coal. For the Homeless v. Husted*, 831 F.3d 686, 715–16 (6th Cir. 2016).

Here, Plaintiff offers the Declaration of Ronald L. Burdge in support of the fees he seeks.

(ECF No. 122-6.) Plaintiff seeks the following fees for specific attorneys and paralegals:

Attorneys
- Troy Doucet (8 years): 42.91 hours x $565 per hour = $24,244.15
- Andrew Gerling (7 years): 21.7 hours x $500 per hour = $10,850.00
- Gregory Wetzel (11 years): 192.77 hours x $385 per hour = $74,216.45
- Christopher Gant (2 years): 332.4 hours x $282 per hour = $93,736.8
- Timothy Cook (3 years): .9 hours x $300 per hour = $270
- Bridget Wasson (10 years): .3 hours x $363 per hour = $108.90
- Robert Byrom (31 years) .4 hours x $412 per hour = $164.80

Paralegals
- Alex Chiu: 2.9 hours x $102 per hour = $295.80
- Elizabeth Steele: 8.1 hours x $110 per hour = $891.00
- Calli Crowder: 11.10 hours x $110 per hour = $1,221.00
- Kara Noland: 14.9 hours x $110 per hour = $1,639.00
- Renee Hatton: .9 hours x $175 per hour = $157.50
- Barbara Meyers: 1.4 hours x $110 per hour = $154

(ECF No. 122, at pg. 4–5.) With respect to this request for fees, Defendants note that "Plaintiff's counsel set their own billing rates and listed them on the billing records, before removing them upon submission to this Court." (ECF No. 124, at pg. 15 & ECF No. 124-2 at PAGEID # 3482–3520.)[5] Plaintiff utterly fails to address this argument, and the Court is disturbed by this omission.

---

[5]Defendants attached the version of Plaintiff's counsel's billing records that included the rates.

James E. Arnold, in his Declaration, compared the hourly rates for each attorney and paralegal in Plaintiff's counsel's firm to the hourly rates they now seek in the Motion for Attorney Fees and determined as follows:[6]

| Normal Hourly Rates per Doucet Firm Bills | Increased Hourly Rates Now Sought in Plaintiff's Motion for Attorney Fees |
| --- | --- |
| Troy Doucet - $385 | Troy Doucet - $565 (46.7% increase) |
| Andrew Gerling - $350 | Andrew Gerling - $500 (42.9% increase) |
| Gregory Wetzel - $375 | Gregory Wetzel - $385 (2.7% increase) |
| Christopher Gant - $245 | Christopher Gant - $282 (15.1% increase) |
| Timothy Cook - $260 | Timothy Cook - $300 (15.4% increase) |
| Bridget Wasson - $355 | Bridget Wasson - $363 (2.3% increase) |
| Robert Byrom - $350 | Robert Byrom - $412 (17.7% increase) |
| Alex Chiu - $95 | Alex Chiu - $102 (7.4% increase) |
| Elizabeth Steele - $100 | Elizabeth Steele - $110 (10% increase) |
| Renee Hatton - $143 | Renee Hatton - $175 (22.4% increase) |
| Barbara M[e]yers - $105 | Barbara M[e]yers - $110 (4.8% increase) |

(ECF No. 124-2, at ¶ 18.)  Because Plaintiff fails to address Mr. Arnold's conclusions, the Court presumes that he does not dispute their accuracy.  Undeniably, Plaintiff's counsel should have submitted complete information to the Court regarding their actual hourly rates.  *Hensley*, 461 U.S. at 437 ("[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."); *see also Lee*, 568 F. Supp. 2d at 875 ("Plaintiff's attorneys must record the number of hours worked and their hourly rate.") (citation omitted).  The Court is left to assume that Plaintiff omitted this information in an effort to avoid bringing the Court's attention to the stark contrast between his counsel's actual hourly rates compared to the rates he is now requesting his counsel be awarded.

As noted above, Plaintiff relies on Mr. Burdge's Declaration in support of his contention that his counsels' fees are reasonable.  (ECF No. 122-6, at ¶¶ 17–24.)  Mr. Burdge is an attorney

---

[6] Mr. Arnold did not include paralegals Calli Crowder and Kara Noland in his analysis.

whose private practice is situated in Dayton, Ohio.[7]  (*Id.* at ¶ 2.)  Mr. Burdge indicates that he

limits his practice to issues relating to consumer law and court-awarded attorneys' fees.  (*Id.*)

Mr. Burdge provides an opinion regarding what he believes to be reasonable hourly rates for

Plaintiff's attorneys and paralegals.[8]  (*Id.* at ¶¶ 17–34.)  Similarly, Mr. Arnold provides an

opinion what he believes to be reasonable rates in his Declaration.[9]  (ECF No. 124, at ¶¶ 20–30

(asserting the following would be reasonable rates per hour:  Doucet = $300; Gerling = $275;

Wetzel = $250; Gant = $200[10]; paralegals = $115).)

Plaintiff has the burden of proof to show the number of hours were reasonably expended

and the rates claimed are also reasonable.  *Tinch v. City of Dayton*, 199 F. Supp. 2d. 758, 762

(S.D. Ohio April 30, 2002) (citations omitted).  The burden does not rest on Defendants, despite

what Plaintiff may think.  (*See, e.g.*, ECF No. 125, at pg. 13 ("Caliber has not met its burden to

overcome the presumption that the fees sought are reasonable.").)  Moreover, as noted in a

previous case involving fees for these same attorneys:

> Counsel has cited no cases, and the Court has found none, where their proposed
> fees were approved, or even where such fees were approved in this locality for
> attorneys of similar experience in an FDCPA or RESPA case.  Although the Court

---

[7] The Court notes that Plaintiff's counsel is situated in Dublin, Ohio.  As such, Mr. Burdge's opinion, standing alone, does not suffice to prove the fees are reasonable.  *See Ousley v. Gen. Motors Ret. Program for Salaried Employees*, 496 F. Supp. 2d 845, 850 (S.D. Ohio March 13, 2006) ("[T]aken alone, the affidavit from an attorney in Columbus, Ohio, is insufficient to support a conclusion that $300 is a reasonable hourly rate for the Dayton market.") (citation omitted).

[8] Notably, Mr. Burdge indicates in his declaration the number of years each person has been in that position as of 2018 instead of when the instant case began in 2015.  (*Id.* at ¶¶ 17–34.)  For example, while Mr. Burdge notes that Attorney Doucet "was admitted to practice 8 years ago[,]" he had only been admitted for five years when the case began.  (*Id.* at ¶ 17.)

[9] Mr. Arnold does not provide what he believes to be a reasonable hourly rate for Timothy Cook, Bridget Wasson, or Robert Byrom.  (*See* ECF No. 124-2.)

[10] Plaintiffs seek a rate of $282 per hour for Mr. Gant's time beginning in September 2016—two months before Mr. Gant was even licensed to practice law.  (ECF No. 124-2, at ¶ 28.)  Plaintiff's fee agreement with his counsel indicated that law clerks would be paid $60-$115 per hour.  (*Id.* at ¶ 29.)

> does not base its determination of reasonable rates on prior cases, the lack of any case awarding similar attorneys a similar rate (or any affidavit from an objective attorney) undercuts Plaintiffs' argument that such rates are considered reasonable in this market.

*Morse v. Specialized Loan Serv., LLC*, No. 2:16-cv-689, 2018 WL 1725693, at *4 (S.D. Ohio April 10, 2018).

Plaintiff has failed to adduce sufficient evidence that the attorney billing rates he seeks are reasonable. For example, Mr. Burdge indicates that he relied on the 2015-2016 United States Consumer Law Attorney Fee Survey Report ("2015-2016 Survey Report"), which, notably, he himself authored. (ECF No. 122-6, at ¶ 7.) Even Mr. Burdge points out that the hourly rate he finds reasonable for Mr. Doucet is higher than the report ascribes to an attorney with similar years of experience. (*Id.* at ¶ 17.) While Mr. Burdge sings Attorney Doucet's praises by opining that "what Attorney Doucet may lack in years of legal experience he more than makes up for in his knowledge of the law, skill development, and reputation[,]" his compliments do not provide sufficient evidence for the Court to conclude that $565 is a reasonable hourly rate for Attorney Doucet. Instead, the Court credits the opinion of Mr. Arnold in which he avers that he is "unaware of any attorney with only eight years' experience who is billing $565 per hour in Columbus, Ohio for consumer law cases (or any other case) and in [his] professional opinion $565/hour is an excessively high and unreasonable hourly rate [under these circumstances]."[11] (ECF No. 124-2, at pg. 5–6.)

---

[11] Again, this case began in 2015 when Mr. Doucet had been out of law school only five years. Arguably, it began years earlier, because this case reflects the third iteration of Plaintiff's claims against Caliber related to his mortgage.

Similarly, Mr. Arnold opines that Mr. Gerling's proposed rate of $500 per hour for an attorney with only seven years of experience is excessively high as is Mr. Wetzel's rate of $385 and Mr. Gant's rate of $282 who was, in fact, an unlicensed law clerk during a portion of the time he billed at that rate. (ECF No. 124-2, at pg. 6-7.)

Instead, the Court will begin by applying the rates Plaintiff's counsel customarily charged, based on the billing records Plaintiff sent to Defendants. *See Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442, 447 (6th Cir. 2009) (finding it was not an abuse of discretion to award fees based on attorney's customary billing rate as the market rate for his services); *Dowling v. Litton Loan Serv., LP*, No. 05-cv-098, 2008 WL 906042, at *1 (S.D. Ohio March 31, 2008) ("The Supreme Court has cautioned that [calculating the market rate for an attorney] is inherently difficult . . . [b]ecause of this variability, the Court may look to other indicia of reasonableness, principally the attorney's customary billing rate.") (internal quotations and citations omitted); *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616–18 (6th Cir. 2007) (affirming award of fees based on attorneys' customary billing rates).

Regarding the paralegals' fees, according to the resumes Plaintiff submitted, only one paralegal indicates that she has work experience at Plaintiff's counsel's law firm on her resume. (ECF No. 122-5 (Kara Noland's most recent work experience at "Whit's Frozen Custard"; Calli Crowder's most recent work experience as an "administrative assistant and student worker" at "Regent University"; Alex Chiu's only work experience as "front line worker" at "OMG Rotisserie"; Elizabeth Steele's "present" work experience as "customer service operator" at "American Electric Power"; Renee Hatton's "present" work experience as "senior litigation paralegal" at "Doucet & Associates, Co., LPA"; Barbara Meyer's "present" work experience at "JMAC Hair and Day Spa").) Furthermore, only two paralegals include *any* paralegal experience on their resume other than working at Plaintiff's counsel's law firm. (*Id.* (Elizabeth Steele's past work experience as a paralegal at "Karr & Sherman, Co LPA"; Barbara Meyer's education history including "paralegal certification program").)

This case is not the first in which the Court has raised similar concerns regarding the paralegals at Doucet & Associates Co., L.P.A.:

> [F]ive paralegals billed at rates between $95 and $148 per hour. Based on the resumes submitted by Plaintiffs, it appears that four of the paralegals had no paralegal experience prior to joining Mr. Doucet's firm. Additionally, it is not clear when any of the paralegals actually joined the firm, thus making it impossible for the Court to determine their exact level of experience. In the [Ohio State Bar Association] survey, a paralegal with no experience typically earns less than $80 per hour. Moreover, the fee agreement provides that the hourly rates of paralegals are generally "$65-115 per hour." Plaintiffs offer no explanation for why one paralegal billed at a rate of $148/hour.

*Morse v. Specialized Loan Servicing, LLC*, No. 2:16-cv-689, 2018 WL 549372, at *3 (S.D. Ohio Jan. 25, 2018) (citations to the docket omitted). The Court, once again, is left in the same position. Here, at least four of the six paralegals billed between $95 and $143 per hour. (ECF No. 124-2, at ¶ 18.) The fee agreement Plaintiff signed also indicated that the hourly rate for paralegals was "$65-115 per hour." (ECF No. 122-7.) For the paralegal rates, the Court again will begin by applying the fee Plaintiff was charged for paralegal work based on the billing records Plaintiff sent to Defendants.

Nevertheless, based on the foregoing concerns and applying the Court's own knowledge and experience, the attorneys' and paralegals' experience level and geographical location, the Court applies an across-the-board reduction of 20% in all hourly rates. *Morse*, 2018 WL 549372 at *3; *Szeinbach v. Ohio State Univ.*, No. 2:08-CV-822, 2017 WL 2821706, at *5 (S.D. Ohio June 30, 2017) (applying 30% across-the-board reduction in counsel's rate).

2. _Reasonableness of the Hours_

"The next step in the lodestar method is to determine the number of compensable hours claimed by [Plaintiff's] counsel." _Morse_, 2018 WL 549372 at *3 (citing _Satgunam v. Basson_, No. 1:12-cv-220, 2017 WL 3634014, at *4 (W.D. Mich. Aug. 24, 2017)). "Although courts are required to exclude from the lodestar calculation hours that were not reasonably expended, courts are not required to act as green-eyeshade accounts and achieve auditing perfection." _Id._ (internal quotations and citations omitted). Courts must simply do "rough justice." _Id._ (citation omitted). Furthermore, statutes that confer attorney's fees on prevailing parties are "not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate the fee an attorney could earn through a private fee arrangement with his client." _Potter v. Blue Cross Blue Shield of Michigan_, 10 F. Supp. 3d 737, 767 (E.D. Mich. March 31, 2014) (citations omitted).

Plaintiff bears the burden of demonstrating that the hours he seeks are reasonable. _Imwalle_, 515 F.3d at 552 ("[In] obtaining the number of hours expended on the case, the district court must conclude that the party seeking the award has sufficiently documented its claim.") (quoting _United State, Local 307 v. G & M Roofing & Sheet Metal Co._, 732 F.2d 495, 502 (6th Cir. 1984)). Here, Plaintiff puts forth no evidence that the hours his counsel seeks are reasonable. Indeed, Mr. Burdge fails to indicate whether he considers the hours spent by Plaintiff's counsel to be reasonable; nor does he do any analysis of the hours expended by each individual attorney and paralegal. (_See_ ECF No. 122-6.)

Defendants maintain that Plaintiff cannot recover for the hours spent solely on his RESPA claim, on which he did not prevail, because "where time is spent on an unsuccessful claim that is factually and legally distinct from the successful claim under which attorney fee[s]

are sought, these unrelated claims must 'be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.'" (ECF No. 124, at pg. 8 (quoting *Hensley*, 461 U.S. at 435).) However, "the district court's rejection of certain grounds is not a sufficient reason for reducing a fee." *Jordan v. City of Cleveland*, 464 F.3d 584, 603 (6th Cir. 2006). Here, the Court concludes that Plaintiff's RESPA claim is not so "factually and legally distinct" from Plaintiff's "successful" claims under the FDCPA and TILA as to render consideration of the fees associated with it severable. Accordingly, the Court will not reduce what it considers to be a reasonable number of hours spent on the case solely on this basis.

"If a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley*, 461 U.S. at 436. This is true "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* "[T]he most critical factor is the degree of success obtained." *Id.* There is, however, "no precise rule for making these determinations." *Id.* "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436–37.

The award of attorney's fees must be proportional to the party's recovery. *Dowling*, 320 F. App'x at 449 (citing *Granzeier v. Middleton*, 173 F.3d 568, 578 (6th Cir. 1999)). "In determining what is proportional, courts should not employ a strict mathematical approach." *Id.* (quoting *Moore v. Freeman*, 355 F.3d 558, 565 (6th Cir. 2004)). Instead, courts "should look at the degree of the plaintiff's overall success." *Id.* (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

Here, Defendants assert that "Plaintiff obtained only a limited degree of success" because he was only successful on two of four claims raised (successful on TILA and FDCPA, but not RESPA or declaratory judgment), he lost on the issue of delinquency which Defendants assert was Plaintiff's "primary concern," and the $15,000 he accepted is "about 1/8 of [his] settlement demands in this litigation, and far less than [he] sought in the complaint." (ECF No. 124, at pg. 11.) Plaintiff, on the other hand, maintains that accepting the $15,000 "allowed him to end the litigation, be current on his mortgage, and have his attorneys paid." (ECF No. 125, at pg. 16–17.) Plaintiff also asserts that he "was potentially facing foreclosure prior to the litigation, and after the litigation he is current on his mortgage with over $10,000 to spare." (*Id.* at 17.)

The Court concludes that Plaintiff achieved only a limited degree of success. Plaintiff recovered only $15,000 despite seeking relief under the FDCPA, TILA, and RESPA, and a declaration that he was not delinquent on his mortgage account. *See McCombs v. Meijer*, No. C-1-99-358, 2002 WL 34461862, at *4 (S.D Ohio Aug. 13, 2002) ("Plaintiff's counsel should not recover a fee award which dwarfs the results obtained in the case, no matter how significant the effort.") (citing *City of Riverside v. Rivera*, 477 U.S. 561 (1986) & *Hensley*, 461 U.S. 424). Furthermore, while the claims raised under FDCPA, RESPA, and TILA are not factually and legally distinct, the issue of Plaintiff's delinquency was separate and dissimilar. On this issue, the Court found in favor of Defendants, finding that Plaintiff was delinquent on his mortgage. (*See* ECF Nos. 110 & 114.). The Court views Plaintiff's success, therefore, as limited.[12] *See Bench Billboard Co. v. City of Toledo*, 499 F. App'x 538, 549 (6th Cir. 2012) (finding that a 25% reduction in the attorney fee award to reflect partial success was appropriate where certain claims

---

[12] The Court notes that Plaintiff was also unsuccessful in his pursuit of Rule 11 sanctions against Defendants and Defendants' counsel.

were not all based on the same legal theories, and while some were upheld others were struck down).

Accordingly, the Court finds it appropriate to reduce Plaintiff's award in light of the limited degree of success he achieved. "The manner by which deductions are taken is in the sole discretion of the trial court." *Diaz v. Romita*, No. 05-70928, 2007 WL 881509, at *4 (E.D. Mich. March 22, 2007) (citing *Hensley*, 461 U.S. at 436–37). Because Plaintiff's billing records are not so detailed that the Court can identify what number of hours was spent on the issue of delinquency alone, and because it is not possible to reduce specific hours based on the $15,000 that Plaintiff recovered, "the Court believes that a percentage reduction is proper so that the fee accurately reflects the degree of overall relief obtained by the plaintiff in relation to the relief sought." *Ne. Ohio Coal. For the Homeless v. Brunner*, 652 F. Supp. 2d 871, 886 (S.D. Ohio July 28, 2009) (concluding that a 20% reduction was appropriate "in light of Plaintiffs' meaningful, but less than total, success") (citing *Hensley*, 461 U.S. at 435; *Kentucky Restaurant Concepts, Inc. v. City of Louisville*, 117 F. App'x 415, 421–22 (6th Cir. 2004) (affirming 35% fee reduction based on partial success); *Allen v. Allied Plant Maintenance Co. of TN., Inc.*, 881 F.2d 291, 300 (6th Cir. 1989) (same)). Here, the Court concludes that a 30% reduction in the total award of attorneys' fees is appropriate in this case given Plaintiff's limited, success.

Moreover, the Court concludes that Plaintiff's counsel provided insufficient detail and created numerous errors and/or deficiencies in their billing. The United States Court of Appeals for the Sixth Circuit has found the following with respect to inadequate documentation:

> With respect to Plaintiff's counsel's billing deficiencies, Supreme Court and Sixth Circuit precedent clearly permit trial courts to reduce attorneys' fees awards "[w]here the documentation of hours is inadequate." *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999) (quoting *Hensley*, 461 U.S. at 433). It is the responsibility of the party seeking attorneys' fees to document its entitlement to fees. This Circuit has held that "[t]he documentation offered in support of the hours charged must be

> of sufficient detail and probative value to enable the court to determine with a high
> degree of certainty that such hours were actually and reasonably expended in the
> prosecution of the litigation." *Imwalle v. Reliance Med. Products, Inc.*, 515 F.3d
> 531, 553 (6th Cir. 2008).

*Ohio Right to Life Soc., Inc. v. Ohio Elections Comm'n*, 590 F. App'x 597, 603 (6th Cir. 2014).

Here, the billing records Plaintiff submitted to the Court do not indicate the hourly rate, the total

amount owed per transaction, and fail to discern which particular person is billing on a

transaction.[13]  What is more, the billing records that Plaintiff presented to the Court contain an

additional 65 time entries, for an additional 37.51 hours, compared to the billing records

submitted to Defendants' counsel.  The Court credits the opinion of Mr. Arnold that this

discrepancy is just one example of a billing error that makes all the records unreliable.  (ECF No.

122-4 ¶ 9–10 ("The addition of time entries years after the billed time was allegedly incurred and

after they were submitted to defense counsel without any explanation or justification in my

opinion renders the billing records of the Doucet Firm unreliable for determining the actual

amount of hours spent on this case by the Doucet Firm.").)  Plaintiff admits he did not provide

the 65 time entries to Defendants' counsel and explains the omission by asserting that the time

entries "were entered into a separate client sub-number that were inadvertently not printed along

with the billing records that were initially given to Defendants' counsel at that time."  (ECF No.

125, at pg. 5.)  This assertion, however, fails to justify the fact that Plaintiff did not explain the

omission in his original Motion.

    As the fee applicant, Plaintiff bears "the burden of supplying the [Court] with adequate

documentation."  *Black v. Lojac Enters.*, No. 96-5654, 1997 WL 377051, at *3 (6th Cir. July 2,

---

[13] Plaintiff did, however, submit billing records to Defendants which show the hourly rate and
the total amount owed per transaction.  (*See* ECF No. 124-2 at PAGEID # 3482–3520.)
Plaintiff produced a timekeeper identification sheet only after an Order from the Court to do
so.  (ECF Nos. 126 & 127.)

1997). "A failure to provide adequate documentation to support a fee petition may result in a reduction of fees." *Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*. 707 F. Supp. 2d 737, 763 (N.D. Ohio March 31, 2010) (citing *Imwalle*, 515 F.3d at 553 (noting that courts in the Sixth Circuit have reduced fees on the basis of insufficient documentation) & *PPG Industries, Inc. v. Celanese Polymer Specialties Co.*, 840 F.2d 1565, 1570 (Fed. Cir. 1988) ("insufficient documentation may warrant a reduction in fees")). Because Plaintiff has failed to provide sufficient billing records, and because of the various omissions, errors, and discrepancies in the billing records submitted to Defendants versus the billing records submitted to the Court, "the Court cannot begin to evaluate the reasonableness of any individual entry." *Saint-Gobain Autover USA, Inc.*, 707 F. Supp. 2d at 763 (citation omitted). Accordingly, given Plaintiff's counsel's billing deficiencies, the Court concludes that a 50% reduction in the total award of attorneys' fees is appropriate in this case. *Ohio Right to Life Soc., Inc.*, 590 F. App'x at 603 (noting that "Sixth Circuit precedent clearly permit trial courts to reduce attorneys' fees awards '[w]here the documentation of hours is inadequate.'" (citing *Reed*, 179 F.3d at 472) (quoting *Hensley*, 461 U.S. at 433)).

This is not the first time this Court has had concerns regarding reasonable hourly rates and reasonable hours expended for Plaintiff's particular counsel. *See Morse*, 2018 WL 549372 at *3 (citing *Barrett v. Green Tree Servicing*, 214 F. Supp. 3d 670, 674 (S.D. Ohio Oct. 12, 2016) (noting that the Court was concerned "about the reasonableness of the hourly rates requested by Plaintiff's attorneys" because "the fee agreement presented to the Court represents that Mr. Doucet's agreed hourly rate" was less than what the firm ultimately charged.)). Here, applying its own knowledge and experience, and taking into account the attorneys' and paralegals' experience, to the extent it could be determined, as well as the geographical location,

and declining to engage in a line-by-line analysis of each time entry, the Court will apply an across-the-board reduction. *See Hensley*, 461 U.S. at 436–37 (indicating that trial courts "may simply reduce the award" as an alternative to "attempt[ing] to identify specific hours that should be eliminated"); *Ne. Ohio Coal. For the Homeless v. Brunner*, No. 2:06-cv-896 (S.D. Ohio Nov. 30, 2010) ("[I]f reductions to the requested number of hours are appropriate, a court has the discretion to utilize a simple across-the-board reduction by a certain percentage as an alternative to line-by-line reductions."). An across-the-board reduction is appropriate where the fee-seeking party provided "vague and incomplete records":

> Given the vague and incomplete records provided by [plaintiff], as well as the inadequate billing information found in the one-line summaries, the Court elects to follow the lead of other courts that have applied an across-the-board reduction to account for these deficiencies. The Court finds that a 50% reduction in fees "is a fair and expeditious solution to determining the sum total of reasonable fees [ ] that [plaintiff] has incurred." *Cobell*, 407 F. Supp. 2d at 166. *See, e.g.*, *Procter & Gamble Co.*, 711 F. Supp. At 906–09 (reductions in fees between 60% and 90% for inadequate documentation); *Codex*, 541 F. Supp. At 1205 (50% reduction in fees where attorney failed to provide a description of the work performed); *Healthcall*, 632 F. Supp. 2d at 685 (40% reduction in fees to account for inadequate "summaries" of activities).

*Saint-Gobain Autover USA, Inc.*, 707 F. Supp. 2d at 764–65. The Sixth Circuit "has not articulated a clear requirement that when an across-the-board reduction to attorneys' fees is based on multiple factors, the court must specify how much of the reduction is attributable to each factor[.]" *Ohio Right to Life Soc., Inc.*, 590 F. App'x at 604–05. However, the Sixth Circuit has indicated that "in certain circumstances, the specificity that would result from such disaggregation would facilitate the appellate court's review." *Id.* at 605.

As explained above, the Court concludes that a 30% reduction based on Plaintiff's limited success to the total award of attorneys' fees; a 50% reduction based on Plaintiff's billing deficiencies to the total award of attorneys' fees; and a 20% reduction to the actual hourly rates

charged by Plaintiff's counsel is appropriate in this case. Accordingly, Plaintiff's counsel's hourly rates shall be reduced by 20% each and the total attorneys' fee award shall be reduced by a total of 80%.

Plaintiff indicated that his counsel worked the following hours:

Troy Doucet – 42.91 hours
Andrew Gerling – 21.7 hours
Gregory Wetzel – 192.77 hours
Christopher Gant – 332.4 hours
Timothy Cook – .9 hours
Bridget Wasson – .3 hours
Robert Byrom – .4 hours
Elizabeth Steele – 8.1 hours
Alex Chiu – 2.9 hours
Renee Hatton – .9 hours
Barbara Meyers – 1.4 hours
Calli Crowder – 11.1 hours
Kara Noland – 14.9 hours

(ECF No. 122, at pg. 4–5.) As discussed above, Plaintiff cannot recover for the 6.9 hours documented on December 12, 2016. Nor can Plaintiff recover on the 27.36 hours expended after July 20, 2018. Per the billing records, Troy Doucet billed the 6.9 hours on December 12, 2016. Accordingly, his hours are reduced to 36.01 hours for this reason. Also per the billing records, for the hours expended after July 20, 2018, Christopher Gant billed 20.9 hours, Alex Chiu billed 3.9 hours,[14] Troy Doucet billed 1.56 hours, and Andrew Gerling billed 1 hour. Accordingly, Christopher Gant's hours are reduced to 311.5 hours, Alex Chiu's hours are reduced to 0 hours, Troy Doucet's hours are reduced to 34.45 hours, and Andrew Gerling's hours are reduced to 20.7 hours. After calculating the 20% reduction in hourly rates multiplied by the hours expended

---

[14] The Court notes that Plaintiff indicated in his Motion that Mr. Chui billed for only 2.9, not 3.9 hours. (ECF No. 122, at pg. 5.) In any event, a review of the billing records reveals that Mr. Chiu did not bill any time for this case until August 2018, after the date of the offer of judgment. (ECF No. 124-2.) Accordingly, Mr. Chiu's hours will be reduced to zero.

(minus the hours for which Plaintiff's counsel cannot recover) and reducing the award by 80%, this brings Plaintiff's total recovery of attorneys' fees to $27,890.44. This award discounts the inflated rates the attorneys seek, reflects Plaintiff's limited success, accounts for counsel's deficient billing practices and records, and is more proportional to Plaintiff's recovery:

| Timekeeper | Customary Rate | Rate with 20% Reduction | Claimed Hours | Hours after Adjustments | Fees Before Reduction | Fees Awarded |
|---|---|---|---|---|---|---|
| Doucet | $385 | $308 | 42.91 | 34.45 | $10,610.60 | $2,112.12 |
| Gerling | $350 | $280 | 21.7 | 20.7 | $5,796 | $1,159.20 |
| Wetzel | $375 | $300 | 192.77 | | $57,831 | $11,566.20 |
| Gant | $245 | $196 | 332.4 | 311.5 | $61,054 | $12,210.80 |
| Cook | $260 | $208 | .9 | | $187.20 | $37.44 |
| Wasson | $355 | $284 | .3 | | $85.20 | $17.04 |
| Byrom | $350 | $280 | .4 | | $112 | $22.40 |
| Steele | $100 | $80 | 8.1 | | $648 | $129.60 |
| Chiu | $95 | $76 | 2.9 | | $220.40 | $44.08 |
| Hatton | $143 | $114 | .9 | 0 | $0 | $0 |
| Meyers | $105 | $82 | 1.4 | | $114.80 | $22.96 |
| Crowder | $110 | $88 | 11.1 | | $976.80 | $195.36 |
| Noland | $110 | $88 | 14.9 | | $1,311.20 | $262.24 |

**Total: $27,789.44**

Finally, the Court is not persuaded that a consideration of the factors outlined in Ohio Rule of Professional Conduct 1.5 necessitates an upward adjustment of Plaintiff's counsel's hourly rates or hours expended. The Court has assessed the applicability of this rule relative to Plaintiff's counsel specifically in another case. The Court finds the analysis pertinent here as well:

The second, third, fourth, fifth, and sixth factor counsel lower hourly rates than those charged by Plaintiffs' counsel in this case. There is no indication that counsel was precluded from other employment by taking on Plaintiffs' case, the Court has already addressed how Plaintiffs' counsel's proposed hourly rates are higher than the customary fee in this locality, despite first demanding actual damages in the amount of approximately $130,000, Plaintiffs ultimately accepted an offer of judgment for $3,000 in statutory damages, and there is no evidence as to any time limitations this case presented. Nor does the nature and length of the professional relationship with the client seem to justify the rates charged by counsel. Moreover, the eighth factor weighs against Plaintiffs' counsel's high hourly rates. There was no risk of nonpayment in this case. Plaintiffs' counsel argues that it took on risk because the fee agreement provides, in certain instances, for the waiver of the balance of fees. Yet, the fee agreement requires Plaintiffs to pay the monthly obligation and only waives the accumulated balance if Plaintiffs fail to settle or prevail after an appeal. In other words, counsel is guaranteed a significant amount of fees even in the event of an adverse ruling. In addition, counsel highlights the fact that the client is refunded payments made if fees are recovered, but the fee agreement actually states that any award recovered in the case will first pay "all unpaid attorneys' fees and Expenses," and then is applied to third-party bills and expenses incurred in litigation before any of the award goes to the client. Fee Agmt., ECF No. 36-2, at PAGEID # 353. This is not a typical contingency fee agreement where the attorney takes on significant risk by taking on the case. Finally, the Court does not agree with Plaintiffs' counsel's argument that the time, difficulty, novelty, [and] skill required to litigate this case, or the reputation of counsel's firm are sufficient to warrant the rates charged.

*Morse*, 2018 WL 1725693 at *3. Here, there is also no indication that counsel was precluded from other employment by taking on Plaintiff's case. Indeed, Plaintiff employed thirteen timekeepers over the course of just this case alone. Furthermore, Plaintiff originally demanded $114,000 in damages but ultimately accepted an offer of judgment for $15,000. (ECF Nos. 121 & 122-1.) As in *Morse*, no evidence suggests any time limitations were presented by this case. Nor is there evidence that the nature and length of the professional relationship with Plaintiff justifies the rates charged by counsel. Also as in *Morse*, no evidence indicates that "the time difficulty, novelty, [and] skill required to litigate this case, or the reputation of counsel's firm are sufficient to warrant the rates charged." 2018 WL 1725693 at *3.

The main difference between this case and *Morse* appears to be the fee agreement. Here, Plaintiff's fee agreement provides that he is "not required to make monthly payments to Doucet for its hourly rate, and Doucet will waive the balance of its bill if You do not win or settle Your Matter." (ECF No. 122-7.) Plaintiff argues this is "[j]ust like a contingency fee agreement." (ECF No. 122, at pg. 12.) However, as noted above, "federal fee shifting statutes do not provide for enhancements of fees in order to compensate for the risk of nonpayment when an attorney takes a case on a contingency basis." *Derry*, 2014 WL 4450146 at *3 (citing *City of Burlington*, 505 U.S. at 561–63 (1992). Accordingly, the Court will not adjust the amount awarded based on Ohio Rule of Professional Conduct 1.5.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff's Motion is **GRANTED IN PART**. Plaintiff shall be **AWARDED $27,789.44** in attorney fees and **$1,418.02** in costs for a total award of **$29,207.46**.

**IT IS SO ORDERED.**


Date: September 30, 2019                    */s/ Elizabeth A. Preston Deavers*_____
                                            **ELIZABETH A. PRESTON DEAVERS**
                                            **CHIEF UNITED STATES MAGISTRATE JUDGE**